61 F.Supp.2d 896 (1999)
Michael S. ROBERTS, Petitioner,
v.
Michael S. BOWERSOX, Respondent.
No. 4:97CV2278-DJS.
United States District Court, E.D. Missouri, Eastern Division.
August 6, 1999.
*897 *898 *899 *900 *901 *902 *903 Michael Roberts, Mineral Point, MI, pro se.
Richard H. Sindel, Sindel and Sindel, Clayton, MO, John William Simon, Simon Law Offices, Jefferson City, MO, for Michael Roberts.
Cassandra K. Dolgin, Atty. General of Missouri, Jefferson City, MO, for Michael Bowersox.

MEMORANDUM AND ORDER
STOHR, District Judge.

I. INTRODUCTION
This matter is before the Court on the petition of Missouri state prisoner Michael S. Roberts, for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On March 28, 1995, in the Circuit Court of St. Louis County, Missouri, a jury found petitioner guilty of murder in the first degree. On May 26, 1995, the trial judge sentenced petitioner to death in accordance with the jury's verdict. In his petition, filed January 11, 1999, Roberts asserts thirty-six grounds for relief.

II. PROCEDURAL BACKGROUND
Petitioner was arrested on February 18, 1994 and charged with the first degree murder of Mary L. Taylor. Additionally, petitioner was charged with two counts of armed criminal action, one count of first degree robbery, one count of second degree burglary, one count of stealing and one count of stealing a motor vehicle. Resp.Exh. A-I, pp. 11-16. The first degree murder charge was severed from the other counts. On March 28, 1995, the jury found petitioner guilty of first degree murder in violation of § 565.020.1. Resp.Exh. A-III, p. 433. On March 29, 1995, based on its finding that petitioner committed the murder "for the purpose of the defendant receiving money or any other thing of monetary value" and because the murder involved depravity of mind in that defendant committed repeated and excessive acts of physical abuse upon the victim, the jury recommended that petitioner be sentenced to death. See Resp.Exh. A-III, p. 453.
On April 24, 1995, petitioner filed a motion for judgment of acquittal or, in the alternative for new trial, for new penalty phase trial or for reduction in punishment, asserting ninety-eight grounds for relief. Resp.Exh. A-III, pp. 468-498. The trial court[1] denied petitioner's motion on May 26, 1995, and petitioner was sentenced to death and a warrant of execution was issued. Resp.Exh. A-III, pp. 499-502.
Petitioner then appealed his conviction and sentence to the Supreme Court of Missouri. Resp.Exh. A-III, p. 518. On September 29, 1995, petitioner filed a pro se motion to vacate, set aside or correct the judgment or sentence, pursuant to Missouri Supreme Court Rule 29.15. Resp.Exh. E-I, pp. 5-9. On December 11, 1995, with the assistance of appointed counsel, petitioner filed his first amended motion to vacate sentence and judgment, including eighteen claims for relief with multiple subparts. Resp.Exh. E-I, pp. 31-120. The circuit court held an evidentiary hearing on the grounds asserted in the *904 motion. The hearing began on April 15, 1996 and concluded on April 18, 1996. Resp.Exh. E-IV, p. 486. The circuit court denied petitioner's motion on the record on April 18, 1996 and issued findings of fact and conclusions of law on May 15, 1996. Resp.Exh. E-IV, pp. 484-608. Petitioner appealed the denial of his Rule 29.15 motion on June 24, 1996. Resp.Exh. E-V, p. 614.
The direct appeal and the appeal from the denial of the Rule 29.15 motion were consolidated and petitioner was appointed new counsel. The Missouri Supreme Court affirmed petitioner's sentence and conviction as well as the trial court's decision overruling petitioner's 29.15 motion. State v. Roberts, 948 S.W.2d 577 (Mo. banc 1997). Petitioner's motion for rehearing was denied on August 19, 1997. On January 12, 1998, the United States Supreme Court denied Roberts' petition for a writ of certiorari. Roberts v. Missouri, ___ U.S. ___, 118 S.Ct. 711, 139 L.Ed.2d 652 (1998).
On November 12, 1997, petitioner filed a motion for appointment of counsel in the instant habeas corpus action. This Court appointed counsel for petitioner on March 12, 1998. The instant petition and request for evidentiary hearing were filed on January 11, 1999.

III. FACTS
The Missouri Supreme Court summarized the facts of the case as follows:
From Michael Roberts's videotaped confession, the jury learned that on February 16, 1994, Roberts and his friends ran out of crack cocaine and money at the same time. He promised his friends that he would remedy the situation, went to his house, obtained a hammer and walked to the home of fifty-six-year-old Mary Taylor, eight doors away. Roberts claimed Ms. Taylor as a friend and believed that her "stuff" had value as a result of his familiarity with it.
Roberts rang Ms. Taylor's doorbell between 10:30 and 11:00 p.m. She let him in. They watched television together. Ms. Taylor took a phone call from her nephew. When the call ended, she and Roberts talked until Ms. Taylor said she wanted to go to sleep and asked Roberts to leave. The two walked toward the front door. Roberts suddenly turned, pushed Ms. Taylor over a table and began hitting her in the head with the hammer as she lay defenseless on the floor. Ms. Taylor pleaded with Roberts to stop. After hitting her in the head with a hammer more than fifteen times, he stopped the beating and went into the kitchen where he knew she kept her purse. Finding the purse, Roberts began rummaging through it until he heard Ms. Taylor move in the front room. Roberts returned to the living room and kicked Ms. Taylor in the head and side, telling her to stay still. Apparently not convinced that she would obey, he ripped the telephone cord from the wall, wrapped it around her neck, and pulled it as tight as he could. She continued to breathe. He ran to the kitchen, grabbed a steak knife and stabbed her repeatedly until he noticed that the knife's blade bent in that process. He tossed the steak knife aside, retrieved a butcher knife from the kitchen and began stabbing Ms. Taylor again. When that weapon did not seem "like it was penetrating her clothes," he went to the kitchen again, filled a large soup pan with water, took it to Ms. Taylor and held her face under the water. Noticing that brain matter had oozed onto his hands, Roberts felt queasy, but decided to continue. He repositioned his hand and forced her head under the water. When her body started to twitch, he "freaked out," released her head, took an answering machine and $200 and left, leaving the hammer and his Cleveland Indians baseball cap behind. He returned to Ms. Taylor's house twice  the first time to steal more valuables and her car and the second time to pretend to find her body and report the crime to the police.
State v. Roberts, 948 S.W.2d 577, 585 (Mo. banc 1997).

*905 IV. PROCEDURAL BAR ANALYSIS
A federal court reviewing a state conviction in a 28 U.S.C. § 2254 proceeding may consider only those claims which the petitioner has presented to the state court in accordance with state procedural rules. Gilmore v. Armontrout, 861 F.2d 1061, 1065 (8th Cir.1988), cert. denied, 490 U.S. 1114, 109 S.Ct. 3176, 104 L.Ed.2d 1037 (1989). This requirement implicates both the question of whether petitioner has exhausted all remedies available in the state courts (the exhaustion requirement), and whether he has preserved his claims for federal habeas corpus review by complying with state procedural rules governing their presentation (the procedural default inquiry). Id. The question of whether a claim is procedurally barred is distinct from the inquiry concerning whether a claim has been exhausted. Satter v. Leapley, 977 F.2d 1259, 1261 (8th Cir.1992). A federal court may entertain a claim which has been procedurally defaulted in the state courts if petitioner can show cause to excuse his state court default as well as resulting prejudice from the default, or if petitioner can show that a fundamental miscarriage of justice would result from the Court's failure to entertain the claim. Wainwright v. Sykes, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); Coleman v. Thompson, 501 U.S. 722, 750-52, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Failure to satisfy the procedural default analysis mandates rejection of that particular ground.
Respondent concedes that petitioner has exhausted his available state remedies in that he has either afforded the state courts a full and fair opportunity to review the claims, or there is not a non-futile state remedy available for these claims. See Resp. to Order to Show Cause, p. 10. However, respondent contends that petitioner did not afford the state courts a full and fair opportunity to review several of the grounds for relief that are now before the Court. The Court will address respondent's procedural default contentions in its analysis of the grounds at issue.

V. ANALYSIS
As a preliminary matter, the Court makes general observations regarding the format of the petition. Throughout the instant petition, petitioner cites a laundry list of constitutional amendments in support of each ground for relief. However, petitioner frequently fails to enunciate and explain specific constitutional theories for relief based on each cited amendment. Furthermore, the Court notes that for many grounds, petitioner fails to cite any relevant authority supporting relief. The Court's analysis of each ground will track the petitioner's treatment and address petitioner's constitutional claims generally. In stating each ground for relief, the Court will quote directly from petitioner's § 2254 petition. Finally, the Court notes that nowhere in the petition does petitioner argue that he did not kill the victim.

A. Grounds for Relief

Ground I: Respondent's custody over the petitioner violates the Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States in that the state trial judge refused to instruct the jury that in deciding whether the prosecution had proved beyond a reasonable doubt each element of the offense of first-degree murder, it could not consider the evidence of psychiatrists who examined petitioner to determine the existence of mental disease or defect.
In his first ground for relief, petitioner claims that he has been deprived of his constitutional rights under the Fifth[2], Sixth[3], Eighth[4] and Fourteenth[5] Amendments *906 as a result of the state trial judge's refusal to instruct the jury that it could not consider the evidence presented by psychiatrists which related to the existence of a mental disease or defect in determining whether or not the prosecution had proved each element of the crime beyond a reasonable doubt. Petitioner points to revelations in different doctors' testimony regarding bad acts in petitioner's past which could be considered in relation to petitioner's propensity to commit the instant crime. Petitioner asserts that where a defendant interposes a mental-health defense to negate the existence of the required mens rea of a crime, that the Missouri legislature and Missouri Supreme Court have mandated the use of pattern instructions to insure that there is no reduction in the prosecution's burden of proof or improper consideration of evidence presented in the development of the mental health defense.
In April of 1994, petitioner filed a notice of intent to rely on the defense of mental disease or defect. Resp.Exh. A-I, p. 33. Pursuant to §§ 552.020-552.030 R.S.Mo., the trial court granted petitioner's motion for mental examination to determine petitioner's capacity to stand trial, as well as his ability to appreciate the nature, quality or wrongfulness of his conduct at the time of the alleged offense. Resp.Exh. A-I, pp. 39-42, 45-46. Additionally, in July of 1994, the trial court granted petitioner's motion for a second psychiatric examination by a physician of petitioner's choosing at petitioner's expense. Resp.Exh. A-I, p. 75.
Subsequently, on February 16, 1995, petitioner filed a withdrawal of intent to rely on the defense of mental disease or defect with respect to excluding criminal responsibility and thereafter filed a notice of intent to present a defense of mental disease or defect negating only the culpable mental state. Resp.Exh. A-II, pp. 309, 329. Prior to the testimony of Dr. Michael Stacy regarding petitioner's mental health, petitioner's counsel requested that the trial judge read the following instruction:
INSTRUCTION D
The next witness to testify is [name of doctor]. He will testify concerning the mental condition of the defendant at the time of the alleged offense. In the course of his testimony, [name of doctor] may testify to statements and information that were received by him during or in connection with his inquiry into the mental condition of the defendant.
In that connection, the Court instructs you that under no circumstances should you consider that testimony as evidence that the defendant did or did not commit the acts charged against him.
Resp.Exh. A-III, p. 379 (MAI-CR 3d 300.20). Petitioner contends that the aforementioned instruction was required to have been read prior to the testimony of Dr. John Rabun as well. Additionally, petitioner requested the following instruction be included in the trial court's final charge to the jury:
INSTRUCTION G
You will recall that certain doctors testified to statements that they said were made to them and information that they said had been received by them during or in connection with their inquiry into the mental condition of the defendant.
In that connection, the Court instructs you that under no circumstances should you consider that testimony as evidence *907 that the defendant did or did not commit the acts charges [sic] against him.
Resp.Exh. A-III, p. 388 (MAI-CR 3d 306.04). The trial court refused both instructions.
As a result of the refusal of the trial court to give these instructions, petitioner contends that the jury was permitted to hear prejudicial facts including his prior incestuous behavior with his siblings as well as prior violent and aberrant behavior. The alleged prejudicial information included statements that petitioner:
had sexual intercourse with and sodomized his five year old sister, deliberately set a fire or fires with the intention of causing serious damage, assaulted his mother, performed fellatio on his younger brother, broke into the Florissant Mitsubishi car dealership, assaulted someone with a trash can, threatened other students with a knife, assaulted a therapist, assaulted and attempted to kill an inmate while in jail, hit an inmate in the face, threatened to assault a female security officer, attempted to get a gun with the intention of killing two people who stole a vehicle from him, ... had intercourse with his other sister, committed a robbery in 1996, and choked a cat to death.
Petition, p. 17 (citations to trial transcript omitted). While petitioner concedes that these incidents were relevant to his mental condition, he insists that the prejudicial nature of this information, coupled with the trial court's refusal to give the requested limiting instructions, denied him the right to an impartial jury.
In reviewing this issue on appeal, the Missouri Supreme Court found that because the testimony of the doctors resulted from an examination pursuant to § 552.030 R.S.Mo., the trial court was required to inform the jury, both orally at the time of admission, and later, by instruction, that it could not consider the testimony in determining whether the accused committed the act charged. State v. Roberts, 948 S.W.2d 577, 587 (Mo. banc 1997), citing State v. Kreutzer, 928 S.W.2d 854 (Mo. banc 1996), cert. denied, 519 U.S. 1083, 117 S.Ct. 752, 136 L.Ed.2d 689 (1997). The state supreme court concluded that although the failure to give the required instruction was error, reversal was not mandated because petitioner suffered no prejudice as a result of the error in that his counsel acknowledged to the jury throughout the trial that petitioner had killed Ms. Taylor.
By conceding that he killed the victim, Roberts could not have been harmed by the failure of the trial court to give the limiting instructions. This is because the only issue before the jury after the admission was whether Roberts deliberated prior to doing what he admitted he did. The jury did not need to be warned that it should not use the mental health experts' testimony as proof that Roberts committed the murder. Roberts's trial admission removed that issue from the jury's consideration.
Roberts, 948 S.W.2d at 588.
Petitioner now argues that the trial court's failure to give the required instructions constitutes an arbitrary withdrawal of the procedural protection afforded by §§ 552.020-552.030 R.S.Mo., and thus violates his due process rights under the United States Constitution. Petition, p. 18, citing Wilkins v. Bowersox, 933 F.Supp. 1496, 1525-26 (W.D.Mo.1996), aff'd, 145 F.3d 1006 (8th Cir.1998).
[U]nder the case law related to habeas proceedings, the trial court's refusal to give a requested instruction must have amounted to a fundamental defect which inherently resulted in a complete miscarriage of justice, or an omission inconsistent with the rudimentary demands of fair procedure, before that failure may be the basis for habeas relief.
Closs v. Leapley, 18 F.3d 574, 579 (8th Cir.1994) (internal quotations and citations omitted); see also Cupp v. Naughten, 414 U.S. 141, 146, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). The Court has read the entire *908 trial transcript. Throughout the proceedings, counsel for defendant admitted that defendant had committed the acts alleged, and contested only whether defendant had a mental disease or defect rendering him unable to coolly reflect or deliberate. In light of defense counsel's concessions as well as the overwhelming evidence, including defendant's confession, that defendant committed the act, the failure of the trial court to read the required limiting instruction did not constitute "a fundamental defect resulting in a complete miscarriage of justice." Closs, 18 F.3d at 579.
Additionally, even were the Court to conclude that the failure to read the required instructions constituted a violation of petitioner's constitutional rights, "an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." Beets v. Iowa Dept. of Corrections Services, 164 F.3d 1131, 1134 (8th Cir.1999), citing Delaware v. Van Arsdall, 475 U.S. 673, 681, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). Viewing the record as a whole, the testimony alleged to be prejudicial to petitioner could only have been used to determine whether defendant was capable of formulating the requisite mental state, and not whether he committed the act. Accordingly, no relief can be granted on this ground because the state court adjudicated the claim on the merits and the adjudication did not result "in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law ..." nor did it result "in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). Therefore, the Court will deny all relief requested in Ground I of the petition.

Ground II: Respondent's custody over the petitioner violates the Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States in that the state trial court refused to allow the petitioner to introduce evidence of substantial cocaine consumption at the time of the offense for which he was on trial, when experts for both the prosecution and defense agreed that ingestion of cocaine would substantially exacerbate the petitioner's preexisting mental disease, defect, or disorder, and would diminish his capacity and ability to reflect coolly on his actions, which is an essential element of the offense of murder in the first degree.
At trial, petitioner presented the testimony of two mental health care experts, Drs. Michael Stacy and Dorsey Dysart. See Resp.Exh. B-X, pp. 1864, 1941. Both doctors testified that petitioner suffered from a mental disease or defect called epileptiform, affecting the frontal temporal lobes of the brain which control behavior and impulsivity. Petitioner contends, without citation to authority, that the trial court's decision to preclude him from introducing evidence that the ingestion of cocaine exacerbated his existing mental disease at the time of the homicide violated his constitutional rights.[6] Additionally, petitioner maintains that the error was exacerbated when the State was permitted to present evidence that cocaine residue was found on items seized from petitioner's home. Resp.Exh. B-VIII, pp. 1550-52. The trial court also instructed the jury that, when determining guilt or innocence, intoxication does not relieve a person of responsibility for his conduct. Resp.Exh. A-III, p. 402 (MAI-CR 3d 310.50).
*909 Petitioner argues that his proffered evidence regarding the effects of his cocaine ingestion on his mental state was highly relevant to demonstrate that his ability to deliberate was substantially impaired and diminished, and that the evidence should have been admitted especially in light of the evidence regarding cocaine offered by the state and the instruction read to the jury. Accordingly, petitioner made offers of proof concerning that evidence. Resp. Exh. B-X, pp. 1899-1902, Resp.Exh. B-XI, pp.2022-2032.
The trial court granted the State's motion in limine to exclude evidence that petitioner's voluntary intoxication precluded him from forming the requisite mental state for first degree murder. This evidence was excluded based on the principle that a jury is not permitted to consider intoxication on the issue of defendant's mental state. See State v. Erwin, 848 S.W.2d 476, 482 (Mo. banc), cert. denied, 510 U.S. 826, 114 S.Ct. 88, 126 L.Ed.2d 56 (1993); see also § 562.076 R.S.Mo. Section 562.076.3 R.S.Mo. provides:
Evidence that a person was in a voluntarily intoxicated or drugged condition may be admissible when otherwise relevant on issues of conduct but in no event shall it be admissible for the purpose of negating a mental state which is an element of the offense. In a trial by jury, the jury shall be so instructed when evidence that a person was in a voluntarily intoxicated or drugged condition has been received into evidence.
On appeal, the Missouri Supreme Court held that the evidence was being offered for purposes expressly prohibited by § 562.076.3 R.S.Mo., specifically, to demonstrate that defendant could not deliberate. Roberts, 948 S.W.2d at 589-90. The state supreme court further found that petitioner's claim that cocaine exacerbated the attack failed to rebut the state's evidence of deliberation prior to the attack.
Respondent contends that although petitioner now references various constitutional amendments in the instant ground for relief, the challenge is essentially one regarding the application of state evidentiary law, and therefore the claim is not cognizable in a federal habeas corpus proceeding. To the extent petitioner attempts to reargue the admissibility of the evidence at issue as a matter of state law, this Court is without authority to determine that the evidence is admissible under Missouri law. Sweet v. Delo, 125 F.3d 1144, 1154, 1157 (8th Cir.1997), cert. denied, ___ U.S. ___, 118 S.Ct. 1197, 140 L.Ed.2d 326 (1998), citing Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Therefore, the Court's review of petitioner's claim is limited to whether "[t]he exclusion of this evidence violated petitioner's due process rights, regardless of the propriety of the court's action under state law." Id. at 1157.
Respondent argues that any such constitutional claim has been procedurally defaulted because petitioner failed to present the claim on constitutional grounds before the state courts. Although the Missouri Supreme Court did not address the constitutional implications of the exclusion of the evidence, on direct appeal, petitioner did contend that the exclusion of this evidence "deprived Mr. Roberts of his rights to due process, a fair trial, and to be free from cruel and unusual punishment, as guaranteed by the Sixth, Eighth and Fourteenth Amendments to the United States Constitution ..." Resp.Exh. G, p. 20. In order to preserve a claim for federal habeas corpus review, petitioner must have presented the claim on federal constitutional grounds to the state courts, relying upon "a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue." Kelly v. Trickey, 844 F.2d 557, 558 (8th Cir.1988) (internal quotations omitted); see also McDonald v. Bowersox, 101 F.3d 588, 598 (8th Cir.1996), cert. denied, 521 U.S. 1127, 117 S.Ct. 2527, 138 L.Ed.2d 1027 (1997); McCall v. Benson, 114 F.3d 754, 757 (8th Cir.1997); Myre v. *910 Iowa, 53 F.3d 199, 200 (8th Cir.1995). Here, the Court finds that petitioner sufficiently stated a specific federal constitutional right on direct appeal and therefore, the instant constitutional claim is not procedurally barred.
The Court must therefore determine whether:
the asserted error was "so conspicuously prejudicial or of such magnitude that it fatally infected the trial and deprived [the defendant] of fundamental fairness."
Sweet, 125 F.3d at 1157, quoting Logan v. Lockhart, 994 F.2d 1324, 1330 (8th Cir. 1993). "Where the state interest [in excluding evidence] is strong, only the exclusion of critical, reliable and highly probative evidence will violate due process." Id. at 1158, quoting Stallings v. Benson, 26 F.3d 817, 819 (8th Cir.1994) (emphasis in original). As is evidenced by state legislation, specifically § 562.076 R.S.Mo., the state has a strong interest in holding persons accountable for conduct committed while voluntarily intoxicated.
The Court has reviewed the testimony of Drs. Dysart, Stacy and Rabun presented by petitioner in his offers of proof regarding the effect of voluntary intoxication on petitioner's alleged mental defect. See Resp.Exh. B-X, pp. 1899-1901, Exh. B-XI, pp.2022-2030, Exh. XII, pp. 2275-2282. Dr. Dysart testified that the ingestion of crack cocaine could make the electrical activity in petitioner's brain more abnormal, affecting his behavior and possibly his ability to coolly reflect and deliberate. Dr. Stacy testified that crack cocaine would at least have an additive effect and would make it more difficult for defendant to deliberate. Dr. Rabun also testified that crack cocaine could cause an increase in petitioner's violent behaviors. However, the testimony of Dr. Bruce Harry during the penalty phase of the trial indicates that many of the effects of the crack cocaine had worn off during the passage of time between petitioner's ingestion of crack cocaine and the time of the murder. Resp.Exh. B-XIII, pp. 2532-45. If petitioner's brain abnormality did not result in sufficient diminished capacity to negate the required mental state, then voluntary intoxication which aggravates the alleged abnormalities does not serve to negate the mental state either. Moreover, defendant cites no authority for the proposition that to hold a defendant criminally responsible for behavior influenced by voluntary intoxication is unconstitutional and the Court is unpersuaded that a rule of law such as Missouri's violates any constitutional principle. Under these circumstances, the Court cannot conclude that the preclusion of evidence regarding voluntary crack cocaine ingestion to demonstrate a heightened mental defect fatally infected the trial with fundamental unfairness. Therefore, the Court will deny the relief requested in Ground II.

Ground III: Respondent's custody over the petitioner violates the Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States in that the state trial court allowed the prosecution to introduce evidence of the petitioner's alleged "prior bad acts" that had no legal relevance or probative value.
In his next ground, petitioner contends that at trial the prosecution was permitted, over objection, to introduce "a virtual mountain of evidence of defendant's prior acts, the vast majority of which had no legal relevance to the crime the petitioner was charged with having committed." Petition, p. 21. Petitioner complains that his videotaped statement and the testimony of other witnesses included evidence regarding petitioner's theft of license plates and tags, his request for a pistol with which to kill the individuals who had stolen the victim's car from him, and his burglary of a car dealership.
The Missouri Supreme Court addressed this issue on appeal and found that evidence regarding petitioner's anger at those *911 individuals that stole the victim's car from him related directly to the "sequence of events that presents a coherent picture of Roberts's crime." Roberts, 948 S.W.2d at 590-91. Therefore, the state supreme court found that this evidence was relevant to demonstrate a "coherent picture of Roberts's crime." Id. at 591. However, the court concluded that the trial court erred in failing to exclude the evidence regarding the theft of license plates and the car dealership burglary, and went on to conclude that there was no danger that the error resulted in prejudice to the proceeding in light of the overwhelming evidence of petitioner's guilt. Id.
As in Ground II, respondent argues that petitioner's claim fails to implicate a federal constitutional right, and instead attempts to reargue matters of state evidentiary law.
On habeas review, evidentiary errors are only relevant to the extent that the presentation or admission of particular proof infringed on "a specific constitutional protection or was so prejudicial as to deny due process." Hobbs v. Lockhart, 791 F.2d 125, 127 (8th Cir.1986) (quotation omitted). Only evidentiary errors that are so grossly prejudicial that they fatally infect the entire trial, preventing it from being fundamentally fair, will justify habeas corpus relief. Rainer v. Department of Corrections, 914 F.2d 1067, 1072 (8th Cir.1990). To make this determination, we "review the totality of the facts in the case and analyze the fairness of the particular trial under consideration." Hobbs, 791 F.2d at 128.
Henderson v. Norris, 118 F.3d 1283, 1286 (8th Cir.1997), cert. denied, ___ U.S. ___, 118 S.Ct. 1081, 140 L.Ed.2d 138 (1998).
No due process violation exists for the admission of prior bad acts testimony unless it can be said that the testimony was "so conspicuously prejudicial or of such magnitude that it fatally infected the trial and deprived [defendant] of fundamental fairness."
McDaniel v. Lockhart, 961 F.2d 1358, 1360 (8th Cir.1992).
After reading the entire trial transcript, the Court finds that the admission into evidence of these uncharged crimes did not fatally infect the fairness of petitioner's trial. The record reveals overwhelming evidence that petitioner committed the murder of Mary Taylor as well as ample evidence that defendant deliberated upon the act. In light of the entire record, the Court does not find that petitioner was denied due process by the admission of these relatively minor prior bad acts in light of the strength of the evidence that petitioner committed this major violent crime. Accordingly, all relief requested in Ground III will be denied.

Ground IV: Respondent's custody over the petitioner violates the Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States in that the state trial court permitted the prosecutor to make improper arguments during the guilt-or-innocence phase of the trial.
In Ground IV, petitioner contends that the trial court violated his constitutional rights in allowing the prosecutor to make numerous improper statements during the closing argument of the guilt-or-innocence phase of the trial. The remarks regarding which petitioner complains include the suggestion that petitioner's commission of prior bad acts justified a finding that petitioner had deliberated on the murder of Taylor, and improper attempts to encourage inappropriate personalization by the jury. Specifically, petitioner points to the prosecutor's references to petitioner's sexual abuse of family members, conduct in kindergarten, jailhouse fight involvement, and car dealership burglary. Additionally, the comments that petitioner alleges constitute improper personalization include asking the jury to imagine how painful the injuries to the victim were and asking the *912 jury to become a branch of law enforcement in a war against crime. Petitioner asserts that allowing the prosecutor to make these arguments deprived him of his right to a fair trial.
Respondent argues, and petitioner apparently concedes, that this claim is procedurally barred as a result of petitioner's trial counsel's failure to lodge a contemporaneous objection to the alleged improper arguments. Petitioner raised the issue on direct appeal. Resp.Exh. G, p. 56. In its opinion, the Missouri Supreme Court noted petitioner's counsel's failure to object to these arguments at trial and declined to exercise discretionary plain error review. Nonetheless, because the court found that petitioner had failed to demonstrate that a manifest injustice had resulted, in effect, plain error review was conducted. Roberts, 948 S.W.2d at 592.
The Eighth Circuit has itself several times acknowledged the disagreement in its decisions: "There appears to be a decisional split within our Circuit on whether plain-error review by a state appellate court waives a procedural default by a habeas petitioner, allowing collateral review by this court." Mack v. Caspari, 92 F.3d 637, 641 n. 6 (8th Cir.1996); see also Burns v. Gammon, 173 F.3d 1089, 1095 (8th Cir.1999); Kilmartin v. Dormire, 161 F.3d 1125, 1127 (8th Cir.1998); Sweet v. Delo, 125 F.3d 1144, 1152 (8th Cir.1997); Mitchell v. Kemna, 109 F.3d 494, 496 (8th Cir.1997); Hornbuckle v. Groose, 106 F.3d 253, 257 (8th Cir.1997). Some cases have held that a plain error review by a state court does not cure a procedural default, but others have concluded that if the state court has conducted plain error review, the court should review for plain error in a habeas action. As several of these cases suggest, until the split is resolved by the Eighth Circuit, a court faced with the question "cannot resolve this divergence ..., [but] may choose which line of cases to follow." Hornbuckle, 106 F.3d at 257; see also Burns, 173 F.3d at 1095; Kilmartin, 161 F.3d at 1127; Sweet, 125 F.3d at 1152; Mitchell, 109 F.3d at 496. This Court adopts the view that the plain error review does not lift the procedural bar, and on that basis concludes that the instant claim is procedurally barred, and therefore denies petitioner's requested relief on this ground.
To excuse the procedural default, petitioner argues that the ineffective assistance of his trial counsel is sufficient cause. Petitioner did raise the ineffectiveness of his trial counsel for failing to object to the prosecutor's arguments as a ground for relief in his post-conviction motion. Resp. Exh. E-I, pp. 74-79. Additionally, petitioner appealed the denial of his post-conviction motion on this ground. Resp.Exh. G, pp. 56-59.[7]
To prevail on a claim of ineffective assistance of counsel, petitioner must show that his counsel's performance was deficient as a matter of constitutional law and that petitioner was prejudiced by the deficient performance. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A constitutionally deficient performance is one that falls "outside the wide range of professionally competent assistance." Id. at 690, 104 S.Ct. 2052. A defendant is prejudiced by deficient performance if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. 2052.
In analyzing petitioner's ineffective assistance claim, the Missouri Supreme Court concluded that, with respect to counsel's failure to object to argument regarding petitioner's prior bad acts, petitioner failed to demonstrate a reasonable probability that his counsel's performance resulted in a different outcome at the trial, and with respect to counsel's failure to object to allegedly improper jury personalization, that the prosecutor's arguments *913 were permissible and failure to object to them was not error. Roberts, 948 S.W.2d at 593-94. The conclusion of the Missouri Supreme Court that trial counsel did not render ineffective assistance is not a finding of fact binding on this Court to the extent stated by 28 U.S.C. § 2254(d). "However, the findings made by the state court in deciding the claim are subject to the deference required by that statute." Nave v. Delo, 62 F.3d 1024, 1037 (8th Cir.1995), citing Strickland v. Washington, 466 U.S. at 687, 104 S.Ct. 2052; see also Sloan v. Delo, 54 F.3d at 1382 (ineffective assistance claims are mixed questions of law and fact; legal conclusions are reviewed de novo and state court findings of fact are presumed to be correct under 28 U.S.C. § 2254(d)).
Having had reviewed the prosecutor's entire closing argument, the Court finds that petitioner has failed to demonstrate any resulting prejudice from his counsel's failure to object to the statements of the prosecutor. Even if the Court were to assume that counsel's failure to object to these arguments fell outside the range of competent assistance, petitioner has wholly failed to show any reasonable probability that but for the alleged errors, he would not have been convicted.
During his closing argument the prosecutor argued:
His whole life his personality from kindergarten every person that he has been close to, and I don't mean  I mean, near  kids in the classroom, paint in their hair, spitting, fighting, kicking, his mother, beating her, raping his sister, blaming it on her  everything that he's done his whole life he's not been held accountable for. And hasn't taken blame.
Resp.Exh. B-XII, pp. 2324-25. The evidence regarding petitioner's prior bad acts had mainly been introduced by petitioner in an effort to show that he suffered from a mental disease or defect which precluded him from forming the requisite mental state. Accordingly, this information was not new to the jury and therefore, was not so prejudicial as to affect the outcome of the trial. As previously discussed, however, references to the burglary of the car dealership and efforts to steal license plates and tags should have been excluded as unrelated to the homicide and not relevant to the issues in the instant case. Although the prosecutor referred to these issues in his closing argument, these references did not so prejudice the jury as to encourage them to find petitioner guilty if they otherwise would not have so found. In closing argument, petitioner's counsel alluded to petitioner's prior bad acts in support of the notion that petitioner was incapable of controlling his impulses, and thus could not have coolly reflected upon the charged crime. See e.g., Resp.Exh. B-XII, p. 2344. Moreover, the trial court instructed the jury that the arguments of counsel were not evidence. Resp.Exh. A-III, pp. 396, 405.
Next, the Court addresses petitioner's assertion that the prosecutor made improper attempts at juror personalization during his closing argument. The following comments are representative of those of which petitioner complains:
You're the last line of protection in the system. And it's up to you whether you protect the citizens of St. Louis County or you don't. It's up to you. Police can't do it. Prosecutor can't do it. The Court can't do it, but you can.
Resp.Exh. B-XII, pp. 2314-15. The Court finds that these isolated statements attacked by petitioner do not constitute improper attempts at encouraging personalization by the jury and therefore, petitioner's counsel was not ineffective for failing to object. Again, there was overwhelming evidence of petitioner's guilt, including his own video-taped confession. The prosecution's attempt to convey to the jury the need for strong law enforcement could in no way be found to have altered the outcome of the proceedings. Moreover, personalization of the victim's suffering could not have added appreciably to the impact of the horrific facts of the crime. Therefore, petitioner has failed to *914 demonstrate ineffective assistance of counsel, and thus has not shown cause for the procedural default.
Finally, even if the instant claim was not procedurally barred, if the Court were to examine the merits of the claim, the standard is essentially the same. "Improper argument violates due process when the argument is so egregious that it renders the entire trial fundamentally unfair." Rodden v. Delo, 143 F.3d 441, 446 (8th Cir.), cert. denied, ___ U.S. ___, 119 S.Ct. 452, 142 L.Ed.2d 405 (1998); see also Ramsey v. Bowersox, 149 F.3d 749, 755 (8th Cir.1998), cert. denied, ___ U.S. ___, 119 S.Ct. 1083, 143 L.Ed.2d 85 (1999), citing Newlon v. Armontrout, 885 F.2d 1328, 1336 (8th Cir.1989), cert. denied, 497 U.S. 1038, 110 S.Ct. 3301, 111 L.Ed.2d 810 (1990).
To decide whether improper argument violates due process, we consider the type of prejudice that arose from the argument, what defense counsel did to minimize the prejudice, whether the jury received proper instructions, and whether there is a reasonable probability of a different sentencing decision absent the improper argument.
Rodden, 143 F.3d at 446. Upon review of both parties' closing arguments, the Court finds that petitioner has not shown that the prosecutor's remarks "were so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair" or that absent the remarks, the verdict would have been different. Kellogg v. Skon, 176 F.3d 447, 452 (8th Cir.1999). As discussed above, any improprieties were not so prejudicial as to cause the Court to question the jury's verdict, especially in light of the overwhelming evidence that petitioner killed Mary Taylor and that he deliberated upon the act. Additionally, the jury was properly instructed that the arguments of the lawyers are not evidence. Accordingly, the prosecutor's arguments did not violate petitioner's due process rights. In light of all the foregoing, this ground is without merit and all relief sought therein will be denied.

Ground V: Respondent's custody over the petitioner violates the Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States in that the state trial court allowed the prosecutor to make improper arguments in the penalty phase of the trial.
Similar to Ground IV, in Ground V petitioner argues that the trial court erred in allowing the prosecutor to make improper arguments at the close of the penalty phase of the trial. Specifically, petitioner lists the following arguments:
references to facts outside the record; improper personalization; improper vouching for the process by which the prosecutor decides to seek the death penalty; improper references to prior bad acts and uncharged crimes; urged jurors to believe their roles to be as a voice to express the community's outrage rather than individuals weighing the aggravating and mitigating factors to dispassionately determine the appropriate sentence; prejudicial statements suggesting that the protections afforded to a criminal defendant by the Constitution were a basis for imposing the death penalty; and statements that because executing the petitioner would allow him the opportunity to "make peace with his maker" the death penalty was the appropriate punishment.
Petition, p. 25 (citations to trial transcript omitted). Petitioner's counsel failed to object to any of these remarks at trial and the Missouri Supreme Court declined to exercise its plain error discretionary review finding that petitioner failed to demonstrate that a manifest injustice would occur if the error was not corrected. Roberts, 948 S.W.2d at 591. In essence, the Missouri Supreme Court concluded that no plain error occurred. Respondent contends that the claim is procedurally defaulted, and the Court agrees for the reasons stated in Ground IV. Also similar to Ground IV, petitioner offers the ineffective assistance of his trial counsel as cause for the default. Petitioner raised the ineffectiveness *915 of trial counsel for failure to object to these statements as a ground in his post-conviction motion. Resp.Exh. E-I, pp. 83-90. The Missouri Supreme Court addressed the issue and concluded that counsel's performance was not constitutionally ineffective for failure to object to the allegedly improper statements. Roberts, 948 S.W.2d at 594-96.[8]
As in Ground IV, even if the Court were to assume that petitioner had demonstrated that his counsel's performance fell below an objective standard of reasonableness, he still must show prejudice resulting therefrom to excuse the default. The showing of prejudice involves essentially the same standard as petitioner's due process claim on the merits. In both instances, petitioner must show that the unchallenged remarks of the prosecutor were so prejudicial that they rendered the trial fundamentally unfair and that there was a reasonable probability of a different outcome absent the remarks. Kellogg, 176 F.3d at 451-52.
First, petitioner complains that the prosecutor argued facts outside the record to the jury. Specifically, the prosecutor stated, "This is as brutal of a murder as has ever occurred in St. Louis County." Resp.Exh. B-XIV, p. 2563. Even if this remark constitutes improper argument, it did not render the proceedings fundamentally unfair. There is no denying that the crime for which petitioner was convicted was especially brutal. Petitioner hit the victim in the head with a hammer numerous times, kicked her, stabbed her, slashed her, attempted to strangle her with a cord and attempted to drown her by placing her head in a pot of water. In light of the graphic descriptions of the crime throughout the trial, the prosecutor's comment did not fatally infect the proceedings.
Next, petitioner contends that the prosecutor made numerous attempts to encourage improper personalization by the jury including the following representative statement: "People have to live alone and you're not safe in this county living alone in your home." Resp.Exh. B-XIV, pp. 2568. The Court has reviewed the remarks at issue and concludes that they were not improper. The statements urged the imposition of the death penalty as strong law enforcement, but did not attempt to impose personal fear that, if defendant were acquitted, the jurors would be in personal danger. Additionally, petitioner had already been convicted of the crime and jurors were aware that the only two punishments were the death penalty and life imprisonment without the possibility of parole. Therefore, the remarks did not offer personal safety as an improper basis for one penalty over the other.
Petitioner also maintains that the prosecutor improperly stated that he thought this was an appropriate case for the death penalty from the very beginning. Petitioner contends that this statement led the jury to believe that someone with more qualifications than they had already determined the appropriate punishment. The jury is necessarily aware that the State believes the death penalty is warranted so that the prosecutor's actual articulation of the fact is not particularly influential. Viewed in light of the entire closing argument, the Court finds that this remark did not have a reasonable probability of affecting the sentencing outcome.
Next, petitioner attacks the prosecutor's references to prior bad acts and his remark that petitioner was a "monster" for having raped his five-year-old sister. As previously stated, the prior bad acts had been introduced by petitioner in an effort to help establish that petitioner suffered from a mental disease or defect that precluded him from formulating the requisite mental state for first degree murder. Because the jury had heard about these prior activities, the Court cannot find that the prosecutor's remarks about them were so prejudicial as to render *916 the sentencing phase unfair. It is proper for the jury to consider a defendant's overall character and conduct in making the penalty decision. Additionally, petitioner's counsel referred to some of these events in an attempt to demonstrate mitigating circumstances during his closing argument and the trial court properly instructed the jury that neither attorney's argument constituted evidence. With respect to the prosecutor's referral to petitioner as a "monster," the Eighth Circuit has held that comments of that nature create inflammatory prejudice. Kellogg, 176 F.3d at 452. "However, the question is not whether the prosecutor's remarks are `undesirable or even universally condemned.'" Id., quoting Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). Instead the question is whether the remark made the proceeding unfair. Again, the characterization adds little impact to the horrific facts themselves. Based on the totality of the circumstances, the Court finds that the prosecutor's comments did not violate petitioner's due process rights.
Similarly, the Court concludes that the remainder of petitioner's complaints about the prosecutor's remarks are without merit because any error did not affect the outcome of the penalty phase and therefore, petitioner cannot demonstrate that his constitutional rights were violated. Therefore, all relief sought in Ground V will be denied.

B. Pretrial Proceedings

Ground VI: Respondent's custody over the petitioner violates the Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States in that trial counsel sought to pressure the petitioner into pleading guilty until two weeks before trial; only when they had given up on pressuring him to plead guilty did they seriously begin to prepare a defense.
In his sixth ground for relief, petitioner alleges that his trial counsel was ineffective for employing the majority of their pretrial efforts to induce petitioner to accept a plea offer, instead of properly preparing a defense. Respondent contends that this ineffective assistance of counsel claim is procedurally defaulted because it was not raised in petitioner's Rule 29.15 motion for post-conviction relief or the appeal from the denial of post-conviction relief. In response to this argument, petitioner contends:
Because the petitioner did not have constitutionally effective counsel to prepare and litigate his post-conviction relief motion, when this motion was his first opportunity to litigate claims of ineffective assistance of counsel of trial counsel, the failure to include claims in such a motion is not an adequate and independent state ground for denying relief in federal habeas corpus or, in the alternative, the errors and omissions of state PCR counsel are "cause" for overlooking the procedural default.
Petitioner's Traverse, p. 12. However, petitioner acknowledges that his position is inconsistent with existing Eighth Circuit law.
Because there exists no constitutional right to counsel in civil postconviction proceedings, the ineffective assistance of such counsel cannot form the basis for habeas corpus relief. See, e.g., Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); Rehbein v. Clarke, 94 F.3d 478, 484 (8th Cir.1996). Neither can ineffective assistance of post-conviction counsel serve as cause to excuse a procedural default even if the post-conviction proceeding was the first time petitioner could have raised the claim. Nolan v. Armontrout, 973 F.2d 615, 617 (8th Cir.1992); see also Lamp v. Iowa, 122 F.3d 1100, 1105 (8th Cir.1997). Petitioner sets forth a lengthy argument that Nolan v. Armontrout was wrongly decided, but Nolan represents the law in this circuit and the Court is bound to *917 follow it. Therefore, the Court concludes that the instant ground is procedurally defaulted and petitioner has failed to demonstrate cause for the default. All relief sought in Ground VI will be denied.

Ground VII: Respondent's custody over the petitioner violates the Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States in that defense counsel withdrew the petitioner's plea of not guilty by reason of mental disease or defect without his knowledge and against his wishes.
Petitioner argues that his trial counsel was ineffective for withdrawing petitioner's notice of intent to rely on the defense of mental disease or defect excluding responsibility without petitioner's knowledge and against his wishes. See Resp.Exh. A-II, p. 309. Counsel later filed a notice of intent to present a defense of mental disease or defect which negated the culpable mental state. Resp.Exh. A-II, p. 329. Petitioner now argues that this decision to abandon the position that petitioner was not guilty constituted ineffective assistance of counsel, especially in light of counsel's failure to consult with petitioner prior to making the determination.
Respondent maintains that petitioner failed to raise this claim in his motion for post-conviction relief and therefore, the claim is procedurally barred from consideration. Petitioner offers only the alleged ineffective assistance of post-conviction counsel as cause for the default. For the reasons set forth in the Court's analysis of Ground VI, the Court agrees that the instant claim is procedurally barred and that petitioner has failed to demonstrate cause sufficient to overcome the bar. See Coleman, 501 U.S. at 750, 111 S.Ct. 2546; Nolan, 973 F.2d at 617. Therefore, all relief requested in Ground VII will be denied.

Ground VIII: Respondent's custody over the petitioner violates the Sixth and Fourteenth Amendments to the Constitution of the United States in that the petitioner was denied effective assistance of counsel in the conduct of pretrial proceedings.
In Ground VIII, petitioner contends that his trial counsel failed to include in the motion for new trial allegations of error concerning admission of certain portions of petitioner's statements to law enforcement officers, and that therefore, trial counsel waived any trial court error in admitting the statements, which counsel had argued were inadmissible during the pretrial proceedings.
Again, respondent claims that this claim for relief is procedurally barred because it was not raised in petitioner's motion for post-conviction relief. For the reasons set forth above in Ground VI, the Court finds that the instant ineffective assistance of counsel ground is procedurally defaulted and that petitioner has failed to demonstrate cause for the default. See Coleman, 501 U.S. at 750, 111 S.Ct. 2546; Nolan, 973 F.2d at 617. Accordingly, Ground VIII will be denied.

C. Jury Selection

Ground IX: Respondent's custody over the petitioner violates the Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States in that the state trial court denied his motion for child care for jurors with dependent children, in derogation of his right to a fair cross-section of the community.
On September 15, 1994, petitioner's trial counsel filed a motion for the court to pay for care of dependent children and family members of single parents selected as jurors. Resp.Exh. A-I, p. 94. Petitioner argued that if this expenditure was not *918 made, the venire pool would not constitute a fair cross-section of the community because certain poor and/or female individuals would be removed due to hardship. The trial court withheld a ruling on the pretrial motion, determining that a decision would be made during the course of the voir dire. Resp.Exh. B-I, p. 173. During voir dire, several jurors indicated some difficulty with child care. See e.g., Resp.Exh. B-II, pp. 315, 361, 373, Resp. Exh. B-V, pp. 879, 883, 885-87, 909. Finding that he did not have the authority to provide supplemental day care assistance for jurors, the trial judge denied petitioner's motion. Resp.Exh. B-V, p. 909. Petitioner asserts that § 50.640 R.S.Mo. permitted the trial court to expend public funds for this purpose. On appeal, the Missouri Supreme Court upheld the trial court's denial of petitioner's motion and found:
It is not constitutionally required that the courts budget child care for jurors. State v. Whitfield, 837 S.W.2d 503, 510 (Mo. banc 1992). "The decision not to provide child care is a rational decision, facially neutral with regard to race and gender. As there is no intention to discriminate, the disproportionate impact on minorities and women is not sufficient to violate the equal protection clause of the Fourteenth Amendment, nor Article I, section 2 of the Missouri Constitution." Id.

Roberts, 948 S.W.2d at 603.
In support of the instant claim for habeas relief, petitioner argues that denial of this motion denied him his constitutional right to a jury which reflects a fair cross-section of the community with respect to race, gender and socio-economic status. Respondent asserts that this claim is not cognizable under 28 U.S.C. § 2254 because it is a challenge to the application of state law. Moreover, respondent maintains that, to the extent petitioner attempts to assert a right to child care for jurors with dependent children, his claim is precluded as a retroactive application of a new rule of constitutional law pursuant to Teague v. Lane, 489 U.S. 288, 311, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). The Court finds that petitioner has sufficiently raised a federal constitutional issue and will address the merits of petitioner's claim.
In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.
Duren v. Missouri, 439 U.S. 357, 364, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). Petitioner summarily alleges that the refusal of the trial court to provide day care for jurors' children discriminates with respect to race, gender and socio-economic status, but petitioner has wholly failed to make such a showing. Even assuming that persons with child care needs constitute a "distinctive" group, petitioner does not demonstrate the jury pool in St. Louis County lacks sufficient numbers of such persons to be fair and reasonable, and that they are systematically excluded by the lack of child care. In fact, the petit jury for petitioner's trial consisted of nine women and three men. Moreover, the transcript of the voir dire process reveals that several men had problems with child care. See e.g., Resp.Exh. B-II, pp. 315, 361, Resp.Exh. B-V, p. 879. Petitioner fails to demonstrate how the trial court's ruling discriminated against jurors with respect to race or socio-economic status. Accordingly, the Court finds Ground IX to be without merit, and will deny the relief sought therein.

*919 Ground X: Respondent's custody over the petitioner violates the Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States in that the state trial court allowed the prosecutor to project throughout voir dire the notion that a penalty phase was inevitable, in derogation of the presumption of innocence and of the petitioner's right to an impartial jury.
Next, petitioner contends that his constitutional rights were violated when the trial court allowed the prosecutor to make statements during voir dire which would lead jurors to believe that a penalty phase was inevitable. Petitioner maintains that these statements were made in derogation of the presumption of innocence and the right to an impartial jury. The statements regarding which petitioner complains include the prosecutor's representation that jurors should "make no mistake" that they will be asked to assess punishment in the case and to impose the death penalty. Resp.Exh. B-III, pp. 442, 480; Resp.Exh. B-IV, p. 796; Resp.Exh. B-V, p. 929. Petitioner's objections to these statements were overruled because the trial court felt that the prosecutor had sufficiently explained that the penalty phase would occur only if petitioner were found guilty. Resp. Exh. B-III, pp. 537, 546; Resp.Exh. B-IV, p. 796. On appeal, the Missouri Supreme Court held that the trial court did not abuse its discretion in allowing the statements. Roberts, 948 S.W.2d at 601.
In reviewing the method of voir dire examination conducted in cases tried before a state court, this Court's authority "is limited to enforcing the commands of the United States Constitution." Mu'Min v. Virginia, 500 U.S. 415, 422, 111 S.Ct. 1899, 114 L.Ed.2d 493 (1991). Moreover, the trial court's conclusion that the jury was not prejudiced by remarks made during the voir dire is a factual determination entitled to the statutory presumption of correctness. 28 U.S.C. § 2254(d); Wright v. Lockhart, 914 F.2d 1093, 1101 (8th Cir.1990). The record supports the trial court's finding that the prosecutor's comments during voir dire did not result in a biased jury. The Court has reviewed the entire voir dire, giving particular attention to those sections highlighted by petitioner, and based upon the Court's own review of the voir dire as a whole, disregarding any presumption of correctness, the Court concludes that, when read in context, the prosecutor's remarks did not impressibly imply that a penalty-phase of the trial was inevitable.
In his opening remarks to each small group of jurors, the prosecutor used an analogy involving a hallway with three doors, the first representing guilt or innocence, the second representing aggravating circumstances, the third representing the balancing of aggravating and mitigating circumstances. On several occasions, the prosecutor emphasized that he was speaking in hypothetical terms, assuming that the jury found petitioner guilty and found aggravating circumstances. Additionally, where the hypothetical nature of the question was not clear, after petitioner's objection, the prosecutor clarified that he was speaking in the hypothetical, assuming guilt and aggravating circumstances had been found. See, e.g., Resp. Exh. B-IV, p. 796; Resp.Exh. B-III, p. 442 ("It's not just a hypothetical. It is now but later it won't be. It's serious."); p. 480 ("When it comes to that third door, assuming you're there in that hypothetical case, you would be able to open that if  you could do that in the proper case?"). Moreover, all of this questioning was done after the prosecutor had described the analogy of the hallway with three doors, and therefore in the context that a penalty phase was only possible if the jury found petitioner guilty. The Court does not find that the prosecutor's remarks unfairly influenced the jury or deprived petitioner of the presumption of innocence. Therefore, all relief requested in Ground X will be denied.

*920 Ground XI: Respondent's custody over the petitioner violates the Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States in that the state trial court allowed the prosecutor to present improper argument during voir dire, in that he attempted to arouse the passions of the venire, misstated the law as to the burden of proof and the definition of aggravating and mitigating factors, improperly commented on the petitioner's right to remain silent, and improperly commented on the evidence, in derogation of the petitioner's right to an impartial jury, to be free from cruel and unusual punishments, and to due process of law.
Similar to the arguments raised in Grounds IV and V, petitioner here argues that, during voir dire, the prosecutor made improper arguments designed to arouse the passions of the venire panel, misstated the law and commented on petitioner's right to remain silent. Petitioner's trial counsel objected to some of the arguments, and the trial court overruled the objections. In his post-conviction motion, petitioner argued that his trial counsel rendered ineffective assistance of counsel by failing to object to several issues arising during voir dire. Resp.Exh. E-I, p. 43. Additionally, on appeal, petitioner raised the trial court's refusal to sustain trial counsel's objections and counsel's ineffective assistance for failing to object to certain statements.[9] The Missouri Supreme Court addressed petitioner's arguments and found them to be without merit. See Roberts, 948 S.W.2d at 599-601.
Respondent claims the instant ground for relief is procedurally barred. To the extent that any part of petitioner's claim that the trial court erred in allowing the statements of the prosecutor is barred, petitioner offers ineffective assistance of trial counsel for failing to object as cause for the default. As discussed in Grounds IV and V, the standard for demonstrating prejudice resulting from the default and the standard for determining whether petitioner was deprived due process as a result is essentially the same.
First, petitioner complains that the prosecutor's statement was improper that he represented "the people of St. Louis County and ... the victims of St. Louis County." Resp.Exh. B-III, p. 392. This comment, viewed in light of the entire record, can in no way be said to have fatally infected the fairness of the trial or to have altered in any way the proceeding's outcome. Therefore, petitioner cannot demonstrate prejudice from counsel's failure to object.
Next, petitioner attacks the prosecutor's alleged misstatements of the law concerning the burden of proof, the definition of reasonable doubt and the definition of aggravating and mitigating circumstances. For example, petitioner complains about the following statements:
If [the defendant] doesn't put on any evidence at all and you don't think my evidence is strong enough to convict then you find him not guilty.
Resp.Exh. B-IV, p. 608.
Aggravating, I guess would be bad; mitigating could be considered favorable.
Resp.Exh. B-IV, p. 594. While some of these statements may not have been completely accurate in stating the law, they were not so erroneous as to have resulted in any prejudice to petitioner. Moreover, the jury was properly instructed at each stage of the proceedings, so any inaccuracies in the prosecutor's statements were corrected. Therefore, any misstatement by the prosecutor was not so improper as to have affected the fundamental fairness *921 of the proceedings nor can petitioner show that he suffered any prejudice as a result of his counsel's failure to object.
Finally, petitioner contends that the prosecutor commented indirectly on petitioner's failure to testify, thus depriving him of his right to a fair trial. The following statements are representative of those regarding which petitioner complains.
Now the Defense, they don't have to put on any evidence at all. Okay. They may or they may not, but they don't have to.... If I haven't proved my case beyond a reasonable doubt, then they don't have to prove anything. Resp.Exh. B-III, p. 550.
[I]f the Defense doesn't put on any evidence then you would judge the case solely on what you hear from the State? Resp.Exh. B-III, p. 552.
The statements cited by petitioner deal more with the burden of proof than petitioner's right to testify. The prosecutor does not comment on petitioner's right to remain silent, and attempts to make clear that the defendant bears no burden to produce evidence. The Court has examined the statements at issue in the context of the entire voir dire as well as the entire trial and finds that these statements did not violate petitioner's due process rights. Petitioner put on evidence at each stage of the trial and all of the prosecutor's comments emphasized to the jury that they should consider all the evidence. Accordingly, petitioner suffered no prejudice as a result of his counsel's failure to object to any of the statements.
The Court concludes that petitioner has failed to show a reasonable probability that the allegedly improper arguments or misstatements of law viewed separately, or cumulatively, affected the outcome of the proceedings. Accordingly, petitioner's claim is without merit and all relief sought in Ground XI will be denied.

Ground XII: Respondent's custody over the petitioner violates the Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States in that the state trial judge sustained the prosecution's objection to trial counsel's voir dire of venire members Berger, Fath, Zimmerman, and Heinbecker concerning (1) their allocation of the burden of proof during the penalty phase, (2) their consideration of mental-health evidence, and (3) their comparison of the death penalty and life imprisonment without parole as punishments, when it allowed the prosecution to go into some of this material, giving the prosecution an unfair advantage in jury selection.
In Ground XII, petitioner contends that his rights to an impartial jury, the effective assistance of counsel, freedom from cruel and unusual punishment and due process of law were violated when the trial court sustained the prosecutor's objections to certain voir dire questions. Counsel's questions were designed to elicit information from the panel concerning the burden of proof and the jurors' ability to consider certain evidence, as well as their position on the severity of life imprisonment versus a death sentence.
On appeal, the Missouri Supreme Court made the following findings. With respect to petitioner's assertion that his counsel should have been permitted to ask whether venirepersons thought a death sentence was preferable to life in prison, the court found that disallowing this single question did not result in prejudice to petitioner, especially where counsel had ample opportunity to voir dire the panel and where he stated that he felt he was relatively knowledgeable on the venire panel's views generally. Roberts, 948 S.W.2d at 599. Regarding other questions that counsel attempted to ask, the Missouri Supreme Court held that because the jurors who he *922 was not permitted to pose these questions to did not serve on the jury, petitioner can show no actual prejudice resulting from the trial court's refusal of these questions. Id. Finally, the Missouri Supreme Court also found petitioner's complaint that the state had procedural advantages over him during voir dire to be without merit as none of the jurors subjected to additional questioning by the state served on the jury. Id.
First, this Court addresses petitioner's claim regarding the trial court's refusal to allow his counsel to question venireperson Berger regarding the burden of proof at the penalty stage.
Voir dire plays a critical role in assuring criminal defendants that their Sixth Amendment right to an impartial jury will be honored. Without an adequate voir dire the trial judge cannot fulfill [the] responsibility to remove prospective jurors who may be biased and defense counsel cannot intelligently exercise peremptory challenges. Nevertheless, trial judges have broad discretion to decide how to conduct voir dire, and they are not required to ask a question in any particular form simply because a party requests it.
Ramsey v. Bowersox, 149 F.3d 749, 756 (8th Cir.1998) (internal quotations and citation omitted). After Berger indicated that he leaned strongly toward the death penalty, the exchange between defense counsel and Berger proceeded as follows:
MR. SLUSHER [defense counsel]: Okay. Say that we have reached Murder in the First Degree, that first stage, and you are strongly leaning towards it. Am I gonna have to show you as the Defense something to make you lean back towards life without parole?
MR. BERGER: Probably. But as long as he's got enough aggravating circumstances, shows strong enough for sure.
MR. SLUSHER: If he has aggravating circumstances am I gonna have to show you something  is the burden gonna be on me then?
Resp.Exh. B-III, pp. 505-06. At that point, the prosecution objected. The trial judge then limited defense counsel's question to whether venireperson Berger would vote for the death penalty in every circumstance or would there be circumstances where he would not.
Petitioner contends that this limitation impermissibly prohibited him from inquiring whether Berger would shift the burden of persuasion to the defense. The Court finds that petitioner's counsel was given a full and fair opportunity to question venireperson Berger. Counsel's inquisition, coupled with the proper charge given to the jury, adequately protected petitioner from prejudice. "The key issue is whether a juror's support for the death penalty would prevent him or her from abiding by the law and following the trial court's instructions." Murray v. Delo, 34 F.3d 1367, 1377 (8th Cir.1994), cert. denied, 515 U.S. 1136, 115 S.Ct. 2567, 132 L.Ed.2d 819 (1995), citing Wainwright v. Witt, 469 U.S. 412, 424, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). Here, petitioner's counsel was permitted to fully examine Mr. Berger regarding the key issue and, Mr. Berger indicated that he could legitimately consider both a death and life imprisonment without parole. Resp.Exh. B-III, p. 511. Therefore, the Court finds that petitioner was not denied due process when his counsel was prohibited from asking questions regarding the burden of proof. To the extent petitioner's claim about the questioning of venireperson Berger is based on the Sixth Amendment right to an impartial jury, it is without merit because any such claim must focus exclusively on the jurors who actually sat on the petit jury. Sloan v. Delo, 54 F.3d 1371, 1387 n. 16 (8th Cir.1995), citing Ross v. Oklahoma, 487 U.S. 81, 86, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988). The loss of a peremptory challenge alone is not a Sixth Amendment violation. Sloan, 54 F.3d at 1387 n. 16.
Next, petitioner complains that trial counsel sustained the prosecutor's objection to his counsel's question to venireperson *923 Fath about any difficulty she may have in hearing conflicting conclusions from different mental health professionals. Resp.Exh. B-VI, pp. 1123-24. However, following the objection, petitioner's counsel was permitted to ask Ms. Fath about tools jurors might use to sort through conflicting opinions. Resp.Exh. B-VI, p. 1124. Upon review of the record, the Court finds that petitioner's counsel's follow-up question to Ms. Fath was more than sufficient to satisfy petitioner's interest in assessing Ms. Fath's opinion on the issue, and therefore, his claim of violation of due process is wholly without merit. There is no constitutional right to voir dire on this subject matter. The trial court was well within its discretion to sustain the prosecutor's objection to the question because the overall examination and the instructions to the jury regarding assessing credibility adequately protected petitioner from any prejudice. Ramsey, 149 F.3d at 756. Moreover, as discussed above, because Ms. Fath did not sit as a juror in the case, no Sixth Amendment violation is possible.
Petitioner also contends that his constitutional rights were violated when his counsel was prohibited from asking a small group of jurors, including venirepersons Heinbecker and Zimmerman:
Does anybody think that maybe life without death [sic] would be a better option if you had to live with that? You would rather have death than life without parole?
Resp.Exh. B-III, p. 586. The trial judge limited petitioner's inquiry to whether the venirepersons would automatically vote for the death sentence or would they consider life without parole. Petitioner's counsel responded that he had "pretty much everybody's view on that" and then ceased questioning. Resp.Exh. B-III, p. 586. The Court finds that petitioner was not denied due process as a result of the trial court's sustaining the prosecutor's objection. Counsel was clearly permitted to question the panel on whether or not they could consider both options. Additionally, the jurors were eventually instructed properly regarding the imposition of sentence. Accordingly, the Court finds that petitioner has failed to demonstrate that his prohibition from asking this one question adversely impacted his right to a fair jury.
Finally, petitioner also complains that he was denied the procedural advantages given to the prosecution. Specifically, petitioner argues that the prosecution was allowed more opportunities to examine the venire members than the defense. The Court has read the entire voir dire transcript and finds that the prosecution was not afforded any significant procedural advantage. As the Missouri Supreme Court noted, on three occasions, the prosecution was allowed to ask additional questions of particular jurors after the defense had finished. Roberts, 948 S.W.2d at 599. Petitioner has failed to demonstrate how allowing the prosecution to gain additional clarification from jurors after equivocal answers on three occasions prejudiced petitioner in any way. Allowing these brief sessions of additional questioning did not constitute an abuse of the wide discretion afforded to the trial court in regulating the voir dire. In light of the foregoing, no relief will be granted on petitioner's claim because the state court's adjudication of the claim did not result in a decision contrary to clearly established federal law or on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d).

Ground XIII: Respondent's custody over the petitioner violates the Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States in that the state trial court removed venire members Walsh, Sutterfield, Jeffries, Hanks, and Benson on the ground that they were not "death qualified," when in fact they indicated that they could consider the death penalty and follow the law as submitted in the jury instructions.
Petitioner next argues that his constitutional rights were violated when the trial *924 court removed certain venire members as not "death qualified" when they had indicated that they were capable of considering the death penalty. On appeal, the Missouri Supreme Court examined the questioning of each of the above-named venire members and concluded that the trial court did not abuse its discretion in striking them for cause. Roberts, 948 S.W.2d at 597-98.
In reviewing the instant claim, the Court notes that:
A trial court may excuse potential jurors for cause if it finds that their "views would prevent or substantially impair the performance of [their] duties as [jurors] in accordance with [their] instructions and [their] oath." Wainwright v. Witt, 469 U.S. 412, 424, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). In reviewing this determination, we are mindful that "deference must be paid to the trial judge who sees and hears the juror." Id. at 426, 105 S.Ct. 844. When a state trial or appellate court has made a factual finding of a claim a petitioner raises on habeas corpus, we defer to that finding if it is fairly supported by the record.
Walls v. Bowersox, 151 F.3d 827, 837 (8th Cir.1998); see also Murray v. Delo, 34 F.3d 1367, 1377 (8th Cir.1994) (whether a juror is impartial is a finding of fact reviewed by examining the entire record, not individual responses). The prosecution also has a legitimate interest in a panel of jurors who are capable of following the court's instructions and obeying their oath. See Adams v. Texas, 448 U.S. 38, 44, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980).
First, petitioner challenges the striking of venireperson Walsh, arguing that she testified that she did not oppose the death penalty. Initially, Ms. Walsh responded that she did not think that she could seriously and legitimately consider imposing the death penalty and that she had some feelings against it. Resp.Exh. B-III, pp. 399-400. Although Walsh did indicate that she could give both sides a fair trial, later she stated that she could not be impartial in considering the death penalty for a former Special School District student. Resp.Exh. B-III, p. 403; Resp.Exh. B-VI, pp. 1058-59. The Court finds that, viewing Ms. Walsh's statements together, they support the trial court's decision to strike her for cause.
Next, petitioner argues that venire member Sutterfield should not have been stricken for cause. When asked about her feelings about the death penalty, Ms. Sutterfield responded that she could not recommend a sentence of death and that:
I don't want the blood on my hands for somebody having the death penalty. It's not my place to take somebody else's life for killing someone else.
Resp.Exh. B-III, pp. 412-13. Although, upon questioning by petitioner's counsel, Ms. Sutterfield stated that she would have to consider the imposition of the death penalty if directed under the law, she stated:
If I had to sit through the jury trial I would have to make a decision. I would consider either punishment. As far as my personal opinion, I don't want a chain of death with the person that got killed and then the person that did the killing. And then it was my decision.
Resp.Exh. B-III, p. 439. The Court finds that Ms. Sutterfield statements viewed in their entirety, clearly support a finding that her views on the death penalty would substantially impair her ability to follow the law. Therefore, the trial court did not err in striking venire member Sutterfield for cause.
With respect to venire member Jeffries, petitioner maintains that Jeffries responded that he could consider imposition of the death penalty and that any problem he might have in denying a defendant an opportunity for rehabilitation did not constitute a substantial impairment that would interfere with his ability to perform his duty as a juror. Reviewing all of Mr. Jeffries' responses in their entirety, however, the Court finds ample support *925 for the trial court's decision to strike him for cause. Resp.Exh. B-IV, pp. 610-20. Early in the examination, Jeffries indicated difficulty with both the death penalty and life imprisonment. Resp.Exh. B-IV, p. 610. Additionally, during questioning by both the prosecutor and the trial court, Jeffries indicated some confusion about what it means to be able to "legitimately consider" imposition of a death sentence. Resp.Exh. B-IV, pp. 617-20. Because the trial court had the opportunity to view Jeffries' demeanor throughout the questioning and in light of Jeffries' inability to determine whether he could consider imposing the death penalty, its decision to strike Jeffries for cause did not violate defendant's constitutional rights. Resp. Exh. B-IV, p. 613.
Next, petitioner attacks the striking for cause of venire member Hanks. Mr. Hanks initially stated that he would hold the prosecution to a higher burden of proof in a death penalty case. Resp.Exh. B-IV, pp. 783-84. The prosecutor and the trial court questioned Mr. Hanks about the burden of proof at length. Resp.Exh. B-IV, pp. 783-95. At the end of the lengthy discussion, it remained unclear as to whether Mr. Hanks fully understood and was capable of applying the correct burden of proof. As noted earlier, the trial court has the unique ability to see and hear the juror and deference must be paid to the trial court's determination regarding whether a juror would be substantially impaired in his ability to perform as a juror. Accordingly, the Court agrees with the Missouri Supreme Court's determination that, "[b]ased on the entire examination and the trial court's more favorable position to interpret Mr. Hanks's demeanor and responses," the trial court's decision to strike Hanks for cause was not an abuse of discretion. Roberts, 948 S.W.2d at 589.
Finally, petitioner argues that venire member Benson was stricken for cause in violation of petitioner's constitutional rights. Mr. Benson initially indicated that he could consider the death penalty, but later clarified that he could only consider it in a child molestation case, not in a murder case. Resp.Exh. B-III, pp. 415-21. Mr. Benson stated his position with certainty and the trial court's decision to strike him was clearly supported by the record.
In light of the foregoing, the Court finds that the state court findings of fact with respect to the above-mentioned venire members' abilities to perform their duties as jurors are amply supported by the record, and are thus entitled to the presumption of correctness afforded by 28 U.S.C. § 2254(e)(1). Therefore, no relief will be granted to petitioner on this ground.

Ground XIV: Respondent's custody over the petitioner violates the Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States in that the state trial court overruled the petitioner's objections to the prosecutor's use of peremptory strikes to remove venire members Eikerenkoetter and Blanchard who are African-American, in that the prosecutor failed to provide nonpretextual race-neutral reasons for these strikes.
In Ground XIV, petitioner maintains that the trial court's decision to overrule his objections to the prosecutor's use of peremptory strikes violated his constitutional rights. Petitioner argues that after the general voir dire, only four African-American members were left in the venire. The prosecutor used two of his peremptory strikes to remove two of the African-Americans, venire members Eikerenkoetter and Blanchard. Petitioner's counsel timely challenged these strikes pursuant to Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The trial court found that the prosecution had given sufficient race-neutral reasons for striking both jurors. Resp.Exh. B-VII, pp. 1211-12. On appeal, the Missouri Supreme Court examined the prosecution's raceneutral *926 reasons and concluded that no Batson violation had occurred.
[The court] conducts a three-part analysis under Batson to determine the validity of peremptory strikes. First, the defendant must make a prima facie showing that the State exercised a peremptory strike because of race. Second, if such a showing is made, the burden shifts to the State to articulate a race-neutral explanation for striking the prospective juror. Third, the trial court must decide whether the defendant has proven purposeful discrimination.
Devoil-El v. Groose, 160 F.3d 1184, 1186 (8th Cir.1998), cert. denied, ___ U.S. ___, 119 S.Ct. 1077, 143 L.Ed.2d 79 (1999) (internal citation omitted). "In habeas proceedings, we presume the correctness of state court findings of fact, and we may set them aside, absent procedural error, only if they lack adequate support in the record." Shurn v. Delo, 177 F.3d 662, 665 (8th Cir.1999), citing Purkett v. Elem, 514 U.S. 765, 769, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995).
The prosecutor's proffered race-neutral reasons for striking venire member Eikerenkoetter included that, the prosecutor did not care for Eikerenkoetter's view on the death penalty, Eikerenkoetter did not speak much or volunteer much information, and that he was a nurse and the prosecutor tended to strike people in the medical field because several doctors would be testifying. Resp.Exh. B-VII, p. 1211. With respect to venire member Blanchard, the prosecutor argued that she had stated that "she could not do" the death penalty and that she could only consider life without parole. Resp.Exh. B-VII, p. 1210; Resp.Exh. B-III, p. 436. Additionally, the prosecution stated that Ms. Blanchard was single with four children and that he did not want people on the jury that did not "do the normal thing" which is to get married and then have children. Resp.Exh. B-VII, p. 1210-11. Finally, the prosecution added the fact that Ms. Blanchard's brother was in prison. Resp.Exh. B-VII, p. 1211.
Petitioner's counsel made no attempt to demonstrate that the prosecutor's proffered race-neutral reasons for striking Ms. Blanchard were pretextual. However, in the instant petition, petitioner argues that Blanchard indicated that she could consider the death penalty and that the stereotypical judgments about her demographic group do not constitute race-neutral reasons for striking Blanchard. These arguments were not presented to the trial court, however, and the Court now finds them to be without merit. The record sufficiently supports the determination of the trial court and the Missouri Supreme Court that Blanchard was struck for race-neutral, nonpretextual reasons, and therefore their findings are subject to the presumption of correctness. 28 U.S.C. § 2254(e)(1). The prosecution's peremptory strike of Blanchard did not violate Batson.
Similarly, the Court concludes that the record supports the state courts' findings with respect to venire member Eikerenkoetter. At trial, petitioner's counsel attempted to establish that the prosecution's proffered race-neutral reasons for the strike were pretextual, however the trial court found this contention to be without merit. Petitioner's counsel argued that Eikerenkoetter was not weak on the death penalty, that there were other jurors who spoke less during the process, and that the prosecution did not strike a white venire member whose husband was a physician's recruiter. The Court finds that petitioner's attempt to show that the prosecution's reasons for striking Eikerenkoetter were pretextual fails. The record supports the state court's ruling and the other venire member to which petitioner compares Eikerenkoetter was not herself in the medical field. Accordingly, the Court concludes that the state courts' findings are entitled to the presumption of correctness, and petitioner's Batson claim is without merit. Therefore, all relief sought in Ground XIV will be denied.

*927 Ground XV: Respondent's custody over the petitioner violates the Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States in that the state trial court refused to remove venire member Koontz for cause, when he testified to his strong preference for a sentence of death over one of life without parole for a person convicted of murder in the first degree.
In Ground XV, petitioner alleges that his constitutional rights were violated when the trial court refused to remove venire member Koontz for cause after he indicated a strong inclination toward the death penalty. Venire member Koontz did not serve on the jury. On appeal, the Missouri Supreme Court held that § 494.480.4 R.S.Mo. prohibited the reversal of a conviction or sentence based on the qualification of a juror who the defense removes using a peremptory challenge. Roberts, 948 S.W.2d at 601. Respondent argues that petitioner's constitutional claim presented here is without merit because the loss of a peremptory challenge does not violate petitioner's constitutional rights.
Peremptory challenges are not of constitutional dimension  loss of a peremptory challenge does not constitute a violation of the constitutional right to a fair jury. See Ross v. Oklahoma, 487 U.S. 81, 88, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988). As long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated.
Cox v. Norris, 133 F.3d 565, 572 (8th Cir. 1997), cert. denied, ___ U.S. ___, 119 S.Ct. 89, 142 L.Ed.2d 70 (1998). As is common throughout the petition, petitioner fails to specify how the trial court's refusal to strike Mr. Koontz for cause is alleged to have violated his Eighth or Fourteenth Amendment rights and the Court finds no such violation. Accordingly, Ground XV is without merit and will be denied.

Ground XVI: Respondent's custody over the petitioner violates the Sixth and Fourteenth Amendments to the Constitution of the United States in that petitioner was denied effective assistance of counsel by trial counsel's failure to raise and preserve claims and issues in voir dire.
In Ground XVI, petitioner argues that his trial counsel was constitutionally ineffective for failing to preserve claims in voir dire. Specifically, petitioner complains that trial counsel failed to object when the prosecutor stated that he was representing the victims of St. Louis County and that the reason jurors took the oath was because voir dire was the most important part of the trial. Petitioner also complains that his trial counsel failed to object to, and even adopted, the prosecution's analogy of the trial as a hallway with three doors, which inadequately conveyed the second degree murder option. Finally, petitioner argues that trial counsel failed to object to the prosecutor's improper comments on petitioner's right to remain silent and failed to object to the trial judge's legally inaccurate comment regarding the effect of aggravating and mitigating circumstances. Petitioner raised all of these grounds in his motion for post-conviction relief. Resp.Exh. E-I, pp. 13-53. However, respondent argues that petitioner only raised the following factual bases in support of this ineffective assistance of counsel claim on appeal:
failure to object to improper questioning during voir dire, limited to the following: comments that the death penalty would ultimately be considered, attempting to arouse the passion of the venirepersons, questioning whether the veniremen as foreman of the jury could sign the death verdict, improperly commenting on defendant's right to remain silent (citing arguments other than what petitioner now contends counsel should have raised an objection to), and improperly commenting on the evidence.
*928 Response to Show Cause, pp. 17-18. Petitioner did raise these claims on appeal. Resp.Exh. G, pp. 82-87.
A petitioner must present both the factual and legal premises of his claims to the state courts in order to preserve them for federal habeas review. This standard applies to claims that trial counsel has been constitutionally ineffective. A habeas petitioner who asserts only broadly in his state petition for relief that his counsel has been ineffective has not immunized his federal habeas claim's specific variations from the effects of the state's procedural requirements. Nor has a petitioner who presents to the state courts a broad claim of ineffectiveness as well as some specific ineffectiveness claims properly presented all conceivable specific variations for purposes of federal habeas review.
Flieger v. Delo, 16 F.3d 878, 884-85 (8th Cir.), cert. denied, 513 U.S. 946, 115 S.Ct. 355, 130 L.Ed.2d 309 (1994) (internal citations and quotations omitted). The Court will therefore only consider those issues raised both in the instant ground and on petitioner's consolidated state court appeal, namely the merits of petitioner's claims that trial counsel was constitutionally ineffective for failing to object to the prosecutor's statement that he represented the victims of St. Louis County, and failing to object to the prosecution's comments regarding the defendant's right to remain silent. All of petitioner's other claims are procedurally barred.
With respect to the surviving claims, the Court finds them to be without merit for the reasons set forth in its analysis of Ground XI. There, petitioner claimed that his constitutional rights were denied when the trial court allowed the prosecutor to make the aforementioned improper statements. The Court found that the claim was procedurally barred, but noted that the standard for demonstrating ineffective assistance of counsel as cause for the default and the merits of the claim were essentially the same. As in that discussion, the Court finds that petitioner has failed to demonstrate any prejudice resulting from his counsel's failure to make the requested objections and therefore, he cannot satisfy the Strickland standard for demonstrating ineffective assistance of counsel for the reasons set forth in the Court's discussion of Ground XI. Therefore, relief on Ground XVI will also be denied.

D. Guilt-or-Innocence Phase

Ground XVII: Respondent's custody over the petitioner violates the Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States in that the state trial court instructed the jury that it had to acquit the petitioner of murder in the first degree before it could consider any lesser-included offense in that this instruction skewed the juror's deliberation toward a capital offense.
Petitioner next contends, without citation to specific constitutional theory or relevant authority, that the trial court violated his constitutional rights when it instructed the jury that in order to consider convicting petitioner of any lesser included offense, it had to first acquit him of murder in the first degree. Resp.Exh. A-III, p. 428 (Instruction 7). Petitioner argues that this instruction unduly emphasized one disposition. Petitioner's counsel failed to object to the instruction at trial, however his appellate counsel raised the issue and requested plain error review from the Missouri Supreme Court. The court declined to exercise its discretionary plain error review and held that the claim "was not preserved for appellate review and does not facially present substantial grounds for believing that manifest injustice resulted." Roberts, 948 S.W.2d at 603. Again, the Court finds that the Missouri Supreme Court in effect conducted plain error review. Moreover, their statements regarding this ground constitute a clear invocation of petitioner's default.
*929 As previously discussed, there is a decisional split within the Eighth Circuit on whether plain-error review by a state appellate court waives a procedural default by a habeas petitioner, allowing collateral review by a district court. Mack, 92 F.3d at 641 n. 6; see also Burns, 173 F.3d at 1095; Kilmartin, 161 F.3d at 1127; Sweet, 125 F.3d at 1152; Mitchell, 109 F.3d at 496; Hornbuckle, 106 F.3d at 257. This Court adopts the view that the Missouri Supreme Court's limited review does not lift the procedural bar, and on that basis denies petitioner's requested relief on this ground.
However, even if the Court were to conduct plain error review on petitioner's claim, it would find that no plain error occurred. Petitioner does not contend that the instruction is an incorrect statement of the law, and primary consideration of the offense actually charged violates no constitutional principle. The Court agrees with the Missouri Supreme Court that the alleged error did not result in a fundamental defect or manifest injustice so as to deprive petitioner of a fair trial and therefore, all relief based on Ground XVII will be denied.

Ground XVIII: Respondent's custody over the petitioner violates the Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States in that the state trial court refused to instruct the jury on the lesser-included offense of felony murder, when the prosecution's evidence supported the instruction, and the refusal skewed the jurors' deliberations toward a capital conviction.
In Ground XVIII, petitioner asserts that he is entitled to habeas relief because the trial court refused to instruct the jury on the lesser-included offense of felony murder. Petitioner maintains that Missouri law requires the giving of a lesser-included offense instruction where supported by the evidence and that in refusing to give same, the trial court departed from regular procedure, thus violating petitioner's Eighth and Fourteenth Amendment rights. The Missouri Supreme Court rejected petitioner's claim holding:
The court did submit a second degree murder instruction; that instruction sufficiently permitted the jury to find that Roberts did not deliberate prior to killing Ms. Taylor. This was Roberts's theory of the case. Roberts was not prejudiced by the absence of a felony murder instruction.
Roberts, 948 S.W.2d at 603.
The trial court instructed petitioner's jury on two offenses: first degree (capital) murder and second degree murder. Petitioner maintains that the evidence also supported a finding that petitioner had committed the murder while robbing the victim, therefore justifying the giving of an instruction for felony murder. In Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), the Supreme Court held unconstitutional an Alabama statute which prohibited lesser included offense instructions in capital cases.
Our fundamental concern in Beck was that a jury convinced that the defendant had committed some violent crime but not convinced that he was guilty of a capital crime might nonetheless vote for a capital conviction if the only alternative was to set the defendant free with no punishment at all.
Schad v. Arizona, 501 U.S. 624, 646, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991). However, in the instant case, as previously noted, the trial court instructed the jury on second degree murder.
[S]ince the jury had the option of convicting [petitioner] of first-degree murder, second-degree murder, or nothing, and convicted him of first-degree murder, there was no harm in failing to give the second-degree felony murder instruction. The jury had the option of convicting [petitioner] of a lesser offense, and did not. They must have found, the reasoning continues, evidence of the deliberation which separates firstdegree *930 from second-degree murder. Therefore, the jury never would have convicted him of any lesser offense, and the absence of the instruction was harmless.
Kilgore v. Bowersox, 124 F.3d 985, 995 (8th Cir.1997).
The lesser-included offense instruction given in this case was clearly supported by the evidence and gave the jury a reasonable third option, and a real choice. In closing argument, petitioner's counsel stated:
If a person's purpose is to cause the death of another person that's Murder in the Second Degree. And that, we're not denying. Knowledge that he knew what he was doing and he was aware of what he's doing. Those aren't the issues.
Resp.Exh. B-XII, p. 2330. The Constitution does not require a trial court to instruct on all lesser included offenses supported by the record. Kilgore, 124 F.3d at 995. Therefore, the state courts' adjudication of petitioner's claim did not result in a decision contrary to clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence at trial. 28 U.S.C. § 2254(d). Accordingly, the Court will deny the requested relief in Ground XVIII.

Ground XIX: Respondent's custody over the petitioner violates the Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States in that the state trial court refused to instruct the jury on mental disease or defect as defeating the essential element of deliberation, i.e., as constituting a defense of diminished capacity, when the evidence supported the instruction and its omission skewed the jurors' deliberation toward a verdict of guilty of a capital offense.
Petitioner next contends that the trial court's refusal to submit a diminished capacity instruction as well as the general converse instruction violated his constitutional rights. Addressing this claim on appeal, the Missouri Supreme Court found:
Notes on Use 8 of MAI 308.03 states that the use of that instruction does not prevent a defendant from also using a converse instruction based on MAI-CR 308.02. However, such converse may not include the mental element of the crime that is conversed in the instruction based on 308.03. In Roberts's case, both of the proffered instructions conversed the element of deliberation. therefore, the Notes on Use advise that both instructions could not be given. The trial court did not err in refusing to submit both instructions.
Roberts, 948 S.W.2d at 603.
In the instant petition, petitioner cites no authority and makes no argument as to how he was prejudiced by the refusal to give the aforementioned instruction.
Improper jury instructions do not warrant federal habeas corpus relief from a state conviction unless they constitute a fundamental defect that results in a complete miscarriage of justice or so infects the entire proceeding as to deprive the defendant of a fair trial.
Stewart v. Nix, 972 F.2d 967, 971 (8th Cir.1992), citing Cupp v. Naughten, 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). Petitioner has utterly failed to demonstrate that the trial court's refusal, in accordance with state law, to read both instructions, constituted a fundamental defect in the proceedings which resulted in a complete miscarriage of justice. Accordingly, the Court determines that Ground XIX is without merit and will be denied.

*931 Ground XX: Respondent's custody over the petitioner violates the Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States in that the state trial court refused to allow the jury to see the petitioner's exhibits  including medical and mental-health records that would have supported defense expert testimony and refuted prosecution witnesses and arguments  when the jury had requested to see these exhibits during its guilt-or-innocence phase deliberations.
In Ground XX, petitioner maintains that the trial court violated his constitutional rights when it refused to allow the jury to see certain of petitioner's exhibits, including mental health reports and records. Petitioner contends that these records were imperative to his defense that he suffered from a diminished capacity, rendering him unable to coolly reflect or deliberate on the murder of Mary Taylor. During its deliberation following the guilt-or-innocence phase of the trial, the jury requested to review all defense exhibits, however the trial judge refused the request because some of the records in question were voluminous in nature and contained some material which may not have been admissible. Resp.Exh. B-XII, p. 2357-2359; Resp.Exh. B-XIII, pp. 2369-70. The trial judge allowed the jury to see the defense exhibits except for those exhibits which had been admitted as business records. Those exhibits included medical records, school records and social records. Resp.Exh. B-XIII, p. 2365. Petitioner argues that the failure to grant the jury access to the medical records amounted to an implicit comment on the reliability of petitioner's evidence.
The Missouri Supreme Court addressed petitioner's claim and concluded, as a matter of state law, that the trial court did not abuse its discretion in declining to provide the jury with the medical records in question. The state supreme court found:
The records were over 1000 pages in length and contained many matters not discussed at trial, as well as hearsay, irrelevant information, and information that could easily be misconstrued. While Roberts contends that redacted versions of the records could have been submitted, it does not appear that this would have been a practical solution under the circumstances. Moreover, to the extent that the records evidenced relevant matters, such issues were also testified to by Roberts's experts. Under these circumstances, we do not find the trial court's decision on this matter was clearly against reason. In light of the considerable testimony by the experts as to the events reported in the records, Roberts did not suffer an injustice because the jury was not also able to review the records during deliberation.
Roberts, 948 S.W.2d at 597. The Court's review of petitioner's claim is limited to whether the trial court's exercise of discretion to refuse to submit the records at issue to the jury constituted a violation of petitioner's constitutional rights, regardless of the propriety of the court's action under state law. The Court concludes that the relevant portions of the records at issue were adequately presented to the jury by petitioner's experts, and therefore, the jury could fully consider it. The jury asked to see all defense exhibits and nothing in their request indicated an intention to focus on the medical records. Much of the information regarding petitioner's prior bad acts was contained in the records and submission of the records may have highlighted these acts. Additionally, the records were over 1000 pages in length and may have distracted the jury with information that was irrelevant or cumulative. For these reasons, the Court finds that petitioner's constitutional rights were not violated by the trial court's refusal to send his voluminous business record evidence, which included medical records, in *932 for the jury's inspection. Accordingly, all relief sought in this ground will be denied.

Ground XXI: Respondent's custody over the petitioner violates the Sixth and Fourteenth Amendments to the Constitution of the United States in that the petitioner was denied effective assistance of counsel in the guilt-or-innocence phase of the trial in respect to their presentation of Dr. Dysart's EEG evidence.
In Ground XXI, petitioner alleges that he was denied the effective assistance of counsel during the guilt-or-innocence phase of his trial as a result of his trial counsel's handling of the redirect examination of Dr. Dorsey William Dysart. Dr. Dysart, a neurologist and psychiatrist, performed an electroencephalogram ("EEG") test on petitioner and testified on direct examination that the results demonstrated brain abnormalities in the frontal lobe of petitioner's brain. Resp.Exh. B-X, p. 1878. On cross-examination, Dr. Dysart admitted that the truck which carried the sensitive machine with which he conducted the test was involved in an accident while en route from Kansas City. Resp.Exh. B-X, p.1915-16. Petitioner complains that his counsel was ineffective on re-direct examination for failing to rehabilitate the general reliability of the test results or to establish why Dr. Dysart did not use an undamaged machine which was available at Barnes Hospital.
Respondent argues, and petitioner apparently concedes, that this grievance is procedurally defaulted because it was not included in petitioner's Rule 29.15 post-conviction relief motion. However, petitioner reasserts the argument that because he did not have constitutionally effective assistance of counsel during his state post-conviction relief proceeding, which was the first opportunity to raise claims of ineffective assistance of trial counsel, and therefore, the failure to include such claims in his motion for post-conviction relief is not an adequate and independent state ground for denying relief. In the alternative, petitioner maintains that the error of post-conviction counsel constitutes cause for overlooking the procedural default. As discussed in Ground VI above, petitioner acknowledges that this argument is not consistent with existing Eighth Circuit law. See, e.g., Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); Nolan v. Armontrout, 973 F.2d 615, 617 (8th Cir.1992). Accordingly, the Court finds the instant ground procedurally barred. Therefore, all relief sought in Ground XXI will be denied.

Ground XXII: Respondent's custody over the petitioner violates the Sixth and Fourteenth Amendments to the Constitution of the United States in that the petitioner was denied effective assistance of counsel by trial counsel's failure to raise and preserve claims and issues arising from the prosecutor's statements, and by their own deficient performance, during the closing argument of the guilt-or-innocence phase of his trial.
In Ground XXII, petitioner complains that his trial counsel was constitutionally ineffective in several respects during the closing arguments of the guilt-or-innocence phase of the trial. Respondent argues that the majority of specific unchallenged comments that make up the factual bases for petitioner's claim were not raised on appeal, and thus are procedurally defaulted. The Court agrees and finds those claims are procedurally barred, and that, for the reasons stated above with respect to Ground VI, petitioner has failed to demonstrate cause and prejudice to excuse the default. See Coleman, 501 U.S. at 750, 111 S.Ct. 2546; Nolan, 973 F.2d. at 617.
Respondent concedes that petitioner preserved and properly raised the following factual bases:
failure to properly object to the prosecutor's arguments, limited to the following: *933 prior bad acts and uncharged crimes during both phases of trial, personalization during both phases of trial, arguing facts outside the record, vouching, community or societal interest, negative inference as to petitioner's invocation of constitutional rights, references to scripture....
Response to Show Cause, p. 17. Accordingly, the Court will address the merits of petitioner's ineffective assistance claims based on these specific factual challenges.
The conclusion of the Missouri Supreme Court that trial counsel did not render ineffective assistance is not a finding of fact binding on this Court to the extent stated by 28 U.S.C. § 2254(d). "However, the findings made by the state court in deciding the claim are subject to the deference required by that statute." Nave v. Delo, 62 F.3d 1024, 1037 (8th Cir.1995), cert. denied, 517 U.S. 1214, 116 S.Ct. 1837, 134 L.Ed.2d 940 (1996), citing Strickland v. Washington, 466 U.S. at 687, 104 S.Ct. 2052; see also Sloan v. Delo, 54 F.3d at 1382 (ineffective assistance claims are mixed questions of law and fact; legal conclusions are reviewed de novo and state court findings of fact are presumed to be correct under 28 U.S.C. § 2254(d)).
As previously discussed, to prevail on his claim of ineffective assistance, "petitioner must establish that his counsel's performance was deficient and that he was prejudiced by that deficient performance." Strickland, 466 U.S. at 698, 104 S.Ct. 2052. A constitutionally deficient performance is one that falls "outside the wide range of professionally competent assistance." Id. at 690, 104 S.Ct. 2052. A defendant is prejudiced by deficient performance if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. 2052.
We have often deferred to counsel's decisions about whether to object to a statement in a prosecutor's summation as "strategic" decisions. Counsel's decision to object during the prosecutor's summation must take into account the possibility that the court will overrule it and that the objection will either antagonize the jury or underscore the prosecutor's words in their minds. Thus, the question we have to ask is not whether the prosecutor's comments were proper, but whether they were so improper that counsel's only defensible choice was to interrupt those comments with an objection.
Bussard v. Lockhart, 32 F.3d 322, 324 (8th Cir.1994) (internal citations omitted).
The Court has previously analyzed the issues regarding which petitioner now complains. Petitioner raised the prosecution's statements during closing arguments in Ground IV, and offered the ineffectiveness of his counsel as cause for procedurally defaulting the claim. As noted in the Court's analysis of Ground IV, the Court has reviewed the prosecution's entire closing argument and for the reasons stated, finds that even if petitioner could establish that his counsel was ineffective for failing to object to certain of the prosecution's statements, absolutely no prejudice resulted to petitioner as a result of counsel's failure to object. Moreover, even if the Court were to consider the procedurally barred portion of this ground, the Court would similarly conclude that petitioner's claim is without merit. Therefore, all relief sought in Ground XXII will be denied.

Ground XXIII: Respondent's custody over the petitioner violates the Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States in that the state trial judge ordered that petitioner be handcuffed and attended by extra guards in front of the jury after it returned its verdict of guilt at the close of the first phase of the trial.
In Ground XXIII, petitioner contends that his constitutional rights were violated when he was handcuffed and attended to by extra guards immediately following the *934 guilty verdict. Petitioner's counsel did not object to those security measures at trial, nor did they raise the issue in petitioner's motion for new trial. Petitioner did raise the issue in his Rule 29.15 motion and on appeal, requesting plain error relief from the Missouri Supreme Court. The Missouri Supreme Court did not address petitioner's claim in its opinion. Respondent maintains that this ground is procedurally barred. Again, petitioner apparently concedes that the ground is procedurally defaulted, but maintains that post-conviction counsel's failure to raise trial counsel's ineffectiveness for failing to object constitutes cause for the default. See Coleman, 501 U.S. at 750, 111 S.Ct. 2546; Nolan, 973 F.2d at 617. As discussed in Ground VI above, ineffectiveness of post-conviction counsel does not constitute cause to excuse a procedural default. Accordingly, Ground XXIII is procedurally barred.

Ground XXIV: Respondent's custody over the petitioner violates the Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States in that trial counsel was constitutionally ineffective for failing to object and to move for appropriate relief when the trial judge ordered that the petitioner be handcuffed and attended by extra guards after it returned its verdict of guilt at the end of the first phase of the trial.
Similar to Ground XXIV, in this ground for relief, petitioner argues that his trial counsel was constitutionally ineffective for failing to object to the order that petitioner be handcuffed and attended to by extra guards in front of the jury after the guilty verdict had been returned. As discussed above, post-conviction counsel failed to raise this ineffective assistance ground in petitioner's Rule 29.15 motion, and therefore, it is procedurally barred for the reasons stated in the Court's discussion of Ground VI.

E. Penalty Phase

Ground XXV: Petitioner was denied the effective assistance of counsel by counsel's failure adequately to investigate mitigation evidence and, if appropriate, to present it in the penalty phase of the movant's trial.
Petitioner next raises an ineffective assistance of trial counsel claim asserting the inadequacy of counsel's investigation and presentation of mitigation evidence during the penalty phase. During the penalty phase, defendant presented the testimony of the following individuals: Dr. Alice Vlietstra, a child psychologist who testified regarding facts from petitioner's childhood; Kathleen Owens, a friend of both petitioner's family and the victim; Dr. Bruce Harry, a psychiatrist who testified about the effect of crack cocaine on petitioner at the time of the crime as a mitigating factor; and finally, Patsy Roberts, petitioner's mother who testified that petitioner was a difficult child, that she loved him, that he had been a good son, but that she did not condone what he did.
In this ground for habeas relief, petitioner argues that his counsel was ineffective for concentrating primarily on the expert testimony of Dr. Vlietstra and for limiting the questioning of petitioner's mother to approximately one transcript page. In response to petitioner's argument, respondent concedes that petitioner has properly preserved the claim that his trial counsel should have prepared and presented more testimony from petitioner's mother. With respect to petitioner's other complaints regarding counsel's performance during the penalty phase, respondent argues that such complaints are procedurally defaulted because they were not raised in petitioner's motion for post-conviction relief. Petitioner maintains that none of his claims should be procedurally barred because he received ineffective assistance of post-conviction counsel, and therefore, has demonstrated cause for his *935 default. As addressed above in the Court's discussion of Ground VI, petitioner's argument is without merit and his general claims regarding trial counsel's alleged lack of sufficient preparation and presentation of evidence during the penalty phase of the trial are procedurally barred. In the alternative, even if the Court were to reach the merits of these procedurally defaulted claims, petitioner has failed to demonstrate any evidence which may have been uncovered or any additional testimony counsel should have presented. Therefore, no prejudice to petitioner resulted from trial counsel's conduct.
Petitioner's claim that his trial counsel was ineffective for failing to adequately prepare for and present the testimony of petitioner's mother is not procedurally defaulted. The trial court denied petitioner's motion for post-conviction relief on this basis, and noted trial counsel's testimony at the hearing on petitioner's motion for post-conviction relief that counsel wanted to show that Patsy Roberts loved petitioner and that he was a good son through brief testimony. Resp.Exh. E-IV, p. 582. At that same hearing, counsel testified that, as a matter of trial strategy, they did not want to use Mrs. Roberts to talk about petitioner's childhood development and mental problems because Mrs. Roberts had previously testified at an evidentiary hearing that petitioner's father had never sexually abused petitioner. This testimony would conflict with that of Dr. Vlietstra who testified about the emotional and psychological injury which resulted from abuse incurred by petitioner. Resp.Exh. E-IV, p. 583. Additionally, counsel stated that they did not want Mrs. Roberts to testify, as she had previously, that petitioner could be violent when angry, that he had struck her in the face, and that he had raped his five-year-old sister. Resp.Exh. E-IV, p. 584. The trial court found trial counsel's testimony credible and concluded that the choices they made with respect to the scope of Mrs. Roberts' testimony, constituted reasonable trial strategy. Moreover, the court concluded that petitioner was not prejudiced by trial counsel's decision not to develop further testimony from Patsy Roberts. Resp.Exh. E-IV, p. 585. Similarly, the Missouri Supreme Court found that there was no reason to believe that further testimony from Mrs. Roberts would have advanced petitioner's cause. Roberts, 948 S.W.2d at 605.
Although petitioner's ineffective assistance of counsel claim is a mixed question of law and fact, the aforementioned state court factual findings are amply supported by the record and thus entitled to the presumption of correctness. In light of the findings that Mrs. Roberts may have testified to petitioner's prior violent outbursts, the Court finds that petitioner's trial counsel made reasonable strategic choices with respect to the presentation of Mrs. Roberts' testimony, and therefore their performance was not deficient. See Jones v. Delo, 56 F.3d 878, 886 (8th Cir. 1995). Furthermore, petitioner has failed to demonstrate any prejudice resulting from trial counsel's decision. Therefore, all relief on this ground will be denied.

Ground XXVI: Respondent's custody over the petitioner violates the Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States in that the state trial court allowed the prosecution to inject gratuitous passion and prejudice into the penalty phase though the use of so-called "victim impact evidence" going beyond the "brief glimpse" into the decedent's life that the Supreme Court of the United States allowed in Payne v. Tennessee.

In Ground XXVI, petitioner argues that the trial court's denial of his motion in limine to preclude the introduction of "victim impact evidence" violated his constitutional rights. The prosecution presented evidence that, at the time of her death, Mary Taylor was in a weakened condition as a result of a recent surgery. Additionally, *936 the two penalty phase witnesses offered by the prosecution, Josephine Williams and Donna Roberts-Phillips, testified that they and the victim were like the "Three Musketeers." Resp.Exh. B-XIII, pp. 2393-94, 2412. Finally, petitioner complains that the prosecutor was permitted to adduce evidence that decedent's cat had been left untended in the victim's house, that it had drunk water from the toilet and had opened a bag of cat food. Resp.Exh. B-XIII, pp. 2405-06. Petitioner maintains that this evidence exceeds the scope of permissible victim impact evidence permitted under Payne v. Tennessee, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). In its review of petitioner's claim, the Missouri Supreme Court found that the evidence presented in this case was not "so unduly prejudicial to render the trial fundamentally unfair." Roberts, 948 S.W.2d at 603.
In Payne v. Tennessee, 501 U.S. 808, 826, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), the United States Supreme Court stated:
We thus hold that if the State chooses to permit the admission of victim impact evidence and prosecutorial argument on that subject, the Eighth Amendment erects no per se bar. A State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed. There is no reason to treat such evidence differently than other relevant evidence is treated.
Id. The Court has reviewed the victim impact evidence presented at petitioner's trial. Both of the State's witnesses testified regarding how kind Mary Taylor was and how close their friendship with her was. Additionally, the Court has reviewed the testimony regarding the victim's cat. All of the "victim impact" evidence viewed cumulatively, does not render petitioner's trial unfair. This evidence has not been shown to have improperly or unconstitutionally influenced the jury's sentencing determination, especially in light of the overwhelming evidence that petitioner committed such a brutal crime. Accordingly, Ground XXVI will be denied in its entirety.

Ground XXVII: Respondent's custody over the petitioner violates the Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States in that the state trial court instructed the jurors that they could consider both the alleged aggravating factor that the killing of the decedent was for the purpose of obtaining money or any thing of monetary value and that it occurred during the course of a robbery, in that this instruction encouraged the jurors to engage in double-counting, thus skewing their deliberations toward death.
Petitioner next argues that the trial court's error in allowing jurors to double-count the taking of property as two aggravating circumstances rather than one violated his Sixth, Eighth and Fourteenth Amendment rights. The trial court gave the jury the following instruction on aggravating circumstances:
In determining the punishment to be assessed against the defendant for the murder of Mary Taylor, you must first unanimously determine whether one or more of the following statutory aggravating circumstances exists:
1. Whether the defendant murdered Mary Taylor for the purpose of the defendant receiving money or any other thing of monetary value from Mary Taylor.
2. Whether the murder of Mary Taylor involved depravity of mind and whether, as a result thereof, the murder was outrageously and wantonly vile, horrible, and inhuman. You can make a determination of depravity of mind only if you find:
That the defendant committed repeated and excessive acts of physical *937 abuse upon Mary Taylor and the killing was therefore unreasonably brutal.
3. Whether the murder of Mary Taylor was committed while the defendant was engaged in the perpetration of robbery. As used in this instruction, the term "robbery" means a person commits the crime of robbery when he forcibly steals property....
Resp.Exh. A-III, p. 441. Petitioner maintains it was error to submit both aggravating circumstance 1, the pecuniary motive of the homicide and 3, the proposition that the murder occurred during a robbery, because the submission of both unfairly slants deliberations toward death.
For its verdict, the jury found aggravating circumstances 1 and 2 beyond a reasonable doubt, but did not find that the murder had occurred during the course of a robbery, aggravating circumstance 3. Resp.Exh. A-III, p. 453. Although not stated in the record, the jury obviously found a basis for distinguishing between the aggravating circumstance regarding the pecuniary motive and the one dealing with robbery. Accordingly, petitioner has no factual basis for arguing that these factors were "double counted" against him. In comparing these two aggravating circumstances, the Missouri Supreme Court has stated that, although related, they emphasize "different facets of criminal activity," one having to do with greed, the other dealing with the use of force. State v. Jones, 749 S.W.2d 356, 365 (Mo. banc 1988); see also Kilgore, 124 F.3d at 992. The jury's verdict solidifies the concept that one of the aggravators can be found without the other. The cases cited by petitioner are inapposite.
In the alternative, even if the Court were to conclude that submitting both aggravating factors was error, it would be harmless because at least one aggravating circumstance would remain.
[T]he sentencing process in Missouri does not involve a simple weighing of aggravating and mitigating circumstances. Once a single aggravating circumstance is found in Missouri, the factfinder is free to consider all the evidence to determine whether the death penalty is appropriate.
Sloan, 54 F.3d at 1385, citing Stringer v. Black, 503 U.S. 222, 232, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992) ("In a nonweighing State, so long as the sentencing body finds at least one valid aggravating factor, the fact that it also finds an invalid aggravating factor does not infect the formal process of deciding whether death is an appropriate penalty."). Therefore, the Court concludes that petitioner is not entitled to relief on Ground XXVII.

Ground XXVIII: Respondent's custody over the petitioner violates the Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States in that the state trial judge instructed the jurors on a "depravity of mind" aggravating factor that did not channel their discretion in the imposition of the death penalty.
Petitioner's next contention also relates to the trial court's aggravating circumstance instruction. This time, petitioner contends that the "depravity of mind" instruction failed to properly hone the jurors' discretion and risked turning what should be a mitigating factor into an aggravating factor in light of petitioner's evidence that he suffered from a brain abnormality. Respondent correctly argues that Missouri's aggravating circumstance of "depravity of mind" has repeatedly been upheld where a limiting instruction is also given. See Mallett v. Bowersox, 160 F.3d 456, 462-63 (8th Cir.1998); LaRette v. Delo, 44 F.3d 681, 686-87 (8th Cir.), cert. denied, 516 U.S. 894, 116 S.Ct. 246, 133 L.Ed.2d 172 (1995). In the instant case, the jury was only permitted to find the depravity of mind aggravating circumstance if they found beyond a reasonable doubt "[t]hat the defendant committed repeated and excessive acts of physical abuse upon Mary Taylor and the killing was therefore unreasonably brutal." Resp. Exh. A-III, p. 441. The Court finds this *938 limitation to be sufficiently specific so the depravity-of-mind instruction was not unconstitutionally vague.
The Court further rejects petitioner's contention that a jury could find that any case of murder in the first degree could fall within the definition of depravity of mind. This is simply not the case. Missouri Revised Statutes § 565.032.2 sets forth numerous aggravating circumstances that make it clear that not all first degree murders fall within the depravity of mind category. A premeditated contract killing effected by a single bullet, for example, would not evidence depravity of mind as delimited by the instructions given in petitioner's case. Moreover, petitioner's argument that the depravity of mind instruction was error because the gruesome nature of the crime should be seen as a mitigating factor instead of an aggravating factor is similarly without merit. Petitioner was free to argue the brutality of the crime supported a finding of the mitigating circumstance that he suffered extreme mental or emotional disturbance. However, the prosecution is similarly permitted to argue that the murder was especially horrible or inhuman to support a finding of the aggravating circumstance.
Again, even if the Court were to conclude that the instruction was improper, because Missouri is a non-weighing state, the jury's finding of another aggravating circumstance, the pecuniary motive, is sufficient to sustain the death sentence. For all these reasons, no relief will be afforded based on Ground XXVIII.

Ground XXIX: Respondent's custody over the petitioner violates the Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States in that trial counsel failed to object and move for a mistrial when so-called "victim impact witnesses" testified beyond the limits the Supreme Court allowed in Payne v. Tennessee.

Petitioner maintains that his constitutional rights were violated by his trial counsel's failure to object to the prosecution's presentation of victim impact testimony which exceeded the limits set by the Supreme Court in Payne v. Tennessee, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). Respondent contends that the instant claim is procedurally barred because it was not raised in petitioner's motion for post-conviction relief. For the reasons discussed in its discussion of Ground VI, the Court agrees and finds this ground procedurally barred. Additionally, for the reasons stated in Ground XXXVI, petitioner suffered no prejudice as a result of the admission of this testimony, so his claim fails on the merits. Therefore, the Court will deny and relief requested in Ground XXIX.

Ground XXX: Respondent's custody over the petitioner violates the Sixth and Fourteenth Amendments to the Constitution of the United States in that the petitioner was denied effective assistance of counsel in failing to raise and preserve claims and issues during the penalty phase of the trial.
In Ground XXX, petitioner argues that his trial counsel failed to object and move for a mistrial or other appropriate relief when the prosecutor asked Dr. Bruce Harry to speculate on the amount of time that had passed between petitioner's ingestion of cocaine and the attack on Mary Taylor and to set forth his opinion of whether a cocaine high was a mitigating factor. Moreover, petitioner contends that trial counsel should have objected to the verdict director read to the jury on the grounds that it contained the "depravity of mind" aggravating factor. Respondent argues that these claims are defaulted for petitioner's failure to plead them in his post-conviction motion. For the reasons set forth in the Court's discussion of Ground VI, respondent is correct. All relief sought in Ground XXX will therefore be denied.

*939 Ground XXXI: Respondent's custody over the petitioner violates the Sixth and Fourteenth Amendments to the Constitution of the United States in that the petitioner was denied effective assistance of counsel in failing to raise and preserve claims and issues arising during closing argument in the penalty phase of the trial.
In Ground XXXI, petitioner argues that he received ineffective assistance of counsel when his trial counsel failed to raise and preserve issues during the prosecution's closing argument of the penalty phase of the trial. Respondent maintains that some of the factual bases asserted for this ground are procedurally defaulted because they were not raised in petitioner's motion for post-conviction relief. For the reasons set forth in Ground VI above, the Court agrees and will limit review of the merits of petitioner's claim to those factual bases which are not procedurally defaulted.
As previously discussed, in order to demonstrate that petitioner received constitutionally ineffective assistance of counsel, he must establish both that his counsel's performance fell below an objective standard of reasonable competence, and that counsel's deficient performance prejudiced him. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Strickland defines prejudice as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. 2052.
First, petitioner maintains that his counsel was constitutionally ineffective for failing to object to the prosecutor's statement that "[t]his is as brutal a murder as ever occurred in St. Louis County." Resp.Exh. B-XIV, p. 2563. Respondent concedes that this statement was improper argument. On appeal, the Missouri Supreme Court found that trial counsel's decision not to object was a strategic one based on trial counsel's testimony at the post-conviction hearing. Trial counsel stated that he did not believe the statement hurt petitioner because, even in trial counsel's opinion, the crime was very brutal. In light of counsel's strategic decision, the overwhelming evidence of the brutality of the crime and petitioner's guilt, and the fact that the jury was properly instructed that arguments by the lawyers are not evidence, the Missouri Supreme Court concluded that it was not ineffective assistance of counsel to refrain from objecting to the prosecutor's statement.
This Court finds that the state court's finding that trial counsel's decision was a strategic one is supported by the record and thus entitled to the presumption of correctness. Although it is improper to argue facts outside the record, no prejudice resulted to petitioner because the brutal nature of the crime was clearly and repeatedly reflected throughout the trial record. Therefore, petitioner has failed to demonstrate the required showing under Strickland.
Next, petitioner complains that his counsel failed to object to the prosecution's statements regarding prior bad acts and referring to petitioner as "a monster." As previously discussed in Ground V, the Court finds that although these references were not proper, petitioner has failed to demonstrate any prejudice resulting from his counsel's failure to object. In analyzing petitioner's ineffective assistance claim, the Missouri Supreme Court found that, with regard to the prior bad acts, petitioner had introduced the majority of these facts in support of his unsuccessful defense. The Court agrees with this finding and concludes that petitioner cannot demonstrate prejudice as a result of the jury hearing about these acts, which it had already heard. Moreover, although calling petitioner a "monster" may have been inflammatory, petitioner cannot show that this isolated comment affected the outcome of the penalty phase proceedings. Therefore, petitioner has failed to satisfy the prejudice prong in Strickland.
*940 Next, petitioner argues that his counsel failed to object to the prosecutor's "call[ing] on the jurors to act as representatives rather than judges of the facts." Petition, p. 62. The Court has reviewed the statements regarding which petitioner complains, and finds that his counsel's failure to object did not fall below the standard of reasonableness, especially in light of the deference applied to counsel's strategic decisions, and certainly resulted in no prejudice to petitioner. Therefore, the Court rejects this portion of petitioner's ineffective assistance of counsel claim.
Finally, petitioner argues that his counsel was ineffective for failing to object when the prosecutor "ridiculed the petitioner's exercise of his right to the assistance of counsel." Petition, p. 63. Specifically, during rebuttal argument at the penalty phase, the prosecution stated, "Where was Mr. Slusher [petitioner's counsel] in his pleas for mercy on February 16th [the night of the murder]?" Resp.Exh. B-?, p. 2584. The Court finds no way in which this comment draws a negative inference regarding the right to counsel and finds that petitioner has failed to make any showing under Strickland which would entitle him to relief on this claim. In light of the foregoing, the Court finds Ground XXXI to be without merit.

F. Fundamental Structure Errors

Ground XXXII: Respondent's custody over the petitioner violates the Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States in that the cumulative effect of the foregoing errors, and especially the acts or omissions of counsel in the state courts, denied the petitioner the right to the effective assistance of counsel and other rights set forth in the foregoing and subsequent grounds for relief.
In Ground XXXII, petitioner contends that the errors asserted in Grounds I-XXXI viewed cumulatively constituted a violation of petitioner's constitutional rights. Petitioner acknowledges that the law in the Eighth Circuit is that:
Errors that are not unconstitutional individually cannot be added together to create a constitutional violation. Neither the cumulative effect of trial errors nor cumulative effect of attorney errors are grounds for habeas relief.
Wainwright v. Lockhart, 80 F.3d 1226, 1233 (8th Cir.1996) (internal citations omitted). However, petitioner goes on to cite cases from other circuits which hold that the cumulative effect of trial counsel's errors can constitute a denial of the constitutional right to effective assistance. This Court is bound by the law of the Eighth Circuit, and therefore finds petitioner's assertions in Ground XXXII to be without merit.

Ground XXXIII: Respondent's custody over the petitioner violates the Eighth and Fourteenth Amendments to the Constitution of the United States in that the State of Missouri has undertaken to provide proportionality review of capital sentencing, but has failed to fulfill this commitment, in violation of the heightened expectation of governmental regularity that applies to capital sentencing.
In Ground XXXIII, petitioner complains that Missouri has failed to provide the proper proportionality review of its capital sentencing scheme. Relying on a study done by Professor John F. Galliher, petitioner argues that the statutory aggravating and mitigating factors "make virtually no difference in punishment verdicts." Petition, p. 67. Additionally, petitioner maintains that the color of the defendant and the decedent account for death verdicts, arguing that Missouri prosecutors and juries value a white life six times more heavily than a black life.[10] Petitioner thus *941 contends that his death sentence imposed in the context of such a scheme is unconstitutional.
Pursuant to § 565.035, the Missouri Supreme Court conducted an independent review of petitioner's sentence, determined that there was sufficient evidence to support the jury's finding of statutory aggravating circumstances and considered whether the death sentence imposed was proportionate to other similar cases. Roberts, 948 S.W.2d at 606-07. Concerning the proportionality of the sentence, the Missouri Supreme Court held:
Roberts's case is similar to other cases in which the defendant invades a home and murders the occupant in order to obtain something of value. Appellant's case is also similar to those in which the defendant used multiple means to cause the victim's death. Considering the crime, the strength of the evidence, and the defendant herein, we do not find Roberts's sentence disproportionate to that imposed in other cases.
Id. at 607.
Petitioner contends that this proportionality review violated his Eighth Amendment and Fourteenth Amendment rights, citing Wilkins v. Bowersox, 933 F.Supp. 1496 (W.D.Mo.), aff'd, 145 F.3d 1006 (8th Cir.1998), cert. denied, ___ U.S. ___, 119 S.Ct. 852, 142 L.Ed.2d 705 (1999). In Wilkins, the district court concluded that the Missouri Supreme Court did not consider certain facts necessary for adequate review of the case. Id. at 1525. However, the Eighth Circuit Court of Appeals did not address the proportionality review issue on appeal.
The Supreme Court has held that the Eighth Amendment does not require a state appellate court to undertake a proportionality review. See Pulley v. Harris, 465 U.S. 37, 50-51, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). However, petitioner also claims a violation of his Fourteenth Amendment due process rights. "While the review is not mandated by the federal Constitution, once in place it must be conducted consistently with the Due Process Clause." Kilgore v. Bowersox, 124 F.3d 985, 996 (8th Cir.1997). Here, the Missouri Supreme Court conducted the relevant review and concluded that the punishment was not disproportionate to punishment imposed for similar crimes in similar cases. Foster v. Delo, 39 F.3d 873, 882 (8th Cir.1994). The Court sees no basis to conclude that the Missouri Supreme Court's procedures in conducting the relevant review violated petitioner's Fourteenth Amendment rights. Accordingly, all relief requested in Ground XXXIII will be denied.

Ground XXXIV: Respondent's custody over the petitioner violates the Eighth and Fourteenth Amendments to the Constitution of the United States in that the State of Missouri's capital sentencing scheme allows unbridled prosecutorial discretion in seeking the death penalty, and that this discretion is in fact exercised on the basis of race, socioeconomic status, and other arbitrary factors.
Petitioner next contends that his sentence is violative of his constitutional rights because Missouri's capital sentencing scheme allows unchecked prosecutorial discretion in determining whether to seek the death penalty, especially where such discretion is exercised on the basis of race, socio-economic status or other factors. Again without citation to authority, petitioner baldly asserts that, where the death penalty is sought, the elected prosecutor can virtually guarantee a death sentence because of the requirement of death-qualification.
A similar argument was offered in Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), where the appellant argued that the state had unfettered authority to select those persons whom it wished to prosecute for a capital offense and to plea bargain with them. This, according to the petitioner, constituted the arbitrariness and capriciousness *942 condemned by Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). The Supreme Court rejected this argument. Gregg v. Georgia, 428 U.S. at 199, 96 S.Ct. 2909; Proffitt v. Florida, 428 U.S. 242, 254, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); Jurek v. Texas, 428 U.S. 262, 274, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1975). As Justice White stated in his concurring opinion in Gregg, "[a]bsent facts to the contrary, it cannot be assumed that prosecutors will be motivated in their charging decisions by factors other than the strength of their case and the likelihood that a jury would impose the death penalty if it convicts." Gregg, 428 U.S. at 225, 96 S.Ct. 2909 (White, J., concurring). Similarly, based on the holding and rationale of Gregg and its progeny as well as petitioner's failure to demonstrate that his race (white) or his socio-economic status entered into the prosecution's decision to seek the death penalty, this Court rejects petitioner's argument here. All relief on Ground XXXIV will be denied.

Ground XXXV: Respondent's custody over the petitioner violates the Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States in that under contemporary conditions, the death penalty is per se disproportionate and excessive because the legitimate governmental purposes asserted to support it may be accomplished by life imprisonment without eligibility for parole.
In Ground XXXV, petitioner contends that the death penalty serves no useful function in the United States on the eve of the twenty-first century. Petitioner maintains that the security provided by the Potosi Correctional Center is more than adequate to serve legitimate governmental purposes, and therefore, any use of the death penalty is gratuitous.
The Court finds petitioner's arguments to be without merit. In concluding that the death penalty is not a per se violation of the Eighth Amendment, the Supreme Court has stated, "[t]he death penalty is said to serve two principal social purposes: retribution and deterrence of capital crimes by prospective offenders." Gregg v. Georgia, 428 U.S. 153, 183, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). Although petitioner contends that retribution and deterrence have atrophied since the ruling in Gregg, the Court is bound to follow existing law. Petitioner's contentions concerning security at Potosi Correctional Center address deterrence, perhaps, and public safety, but not capital punishment's retributive purpose, which has not been found to be unconstitutional in and of itself. As such, all relief sought in Ground XXXV will be denied.

Ground XXXVI: Respondent's custody over the petitioner violates the Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States in that the process by which the death penalty is administered in the United States  and, specifically, in the State of Missouri  fails to assure that capital cases are administered fairly and impartially and to minimize the risk that innocent persons are executed in that (1) counsel are not reliably trained, selected, and supported; (2) courts are denied the power to exercise independent judgment on the merits of constitutional claims in state post-conviction relief proceedings and on federal habeas corpus; (3) racial discrimination  as to the defendant and as to the decedent  continues to be a significant factor in death sentencing; and (4) capital jurisdictions continue to sentence to death the retarded and persons under the age of eighteen at the time of the offense.
Petitioner next contends that the death penalty as administered in the United *943 States violates the Constitution for the reasons set forth in the American Bar Association's recommendation of February 3, 1997. Petitioner urges the Court to act in accordance with the ABA's recommendation and observe a moratorium on the death sentence. Petitioner's arguments are more properly addressed to legislative officials and the Court finds that petitioner fails to establish a violation of federal law or the constitution entitling him to relief under 28 U.S.C. § 2254. Accordingly, the Court will deny all relief sought in Ground XXXVI.

VI. EVIDENTIARY HEARING
Also before the Court is petitioner's request for evidentiary hearing on Grounds XXXIII, XXXIV, XXXV, and XXXVI of the petition. As previously noted, these claims pertain to the Missouri Supreme Court's proportionality review, prosecutorial discretion in determining when to seek the death penalty, the proportionality of the death penalty itself, and the correlation between the death penalty and the race of the defendant and/or the victim. Because the instant petition was filed after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), its provisions impact the standards governing evidentiary hearings. Miller v. Champion, 161 F.3d 1249, 1252 (10th Cir.1998). Title 28 U.S.C. § 2254(e)(2) provides:
If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that 
(A) the claim relies on 
(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.
Petitioner contends that he did not fail to develop the factual basis of these claims before the state court, but instead was denied an opportunity to do so when the trial court refused to allow him the opportunity to present evidence in support of these claims. However, even if petitioner did not fail to develop the facts in state court, he still must demonstrate:
both cause for his failure to adequately develop the facts material to his ... claim in the post-conviction state court hearing and actual prejudice resulting therefrom; alternatively, petitioner must show that a fundamental miscarriage of justice would result from the denial of an evidentiary hearing in federal court.
McCann v. Armontrout, 973 F.2d 655, 658 (8th Cir.1992), applying the standard set forth in Keeney v. Tamayo-Reyes, 504 U.S. 1, 11-12, 118 L.Ed.2d 318 112 S.Ct. 1715 (1992). Additionally,
[i]n order ... to find that a fundamental miscarriage of justice would result from the denial of an evidentiary hearing in federal court, petitioner must demonstrate that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).
McCann, 973 F.2d at 658 (internal citation omitted). "[T]he petitioner is not entitled to a hearing where the record clearly indicates that his claims are either barred from review or without merit." Wilson v. Kemna, 12 F.3d 145, 146 (8th Cir.1994).
The Court finds that, as to those claims on which petitioner seeks an evidentiary hearing, petitioner has wholly failed to meet the required showing and therefore, will deny petitioner's motion for evidentiary hearing on Grounds XXXIII through XXXVI.
*944 Therefore, in accordance with the foregoing memorandum,
IT IS HEREBY ORDERED that petitioner's motion for evidentiary hearing [Doc. # 27] is denied.
NOTES
[1] The Honorable Kenneth M. Weinstock, Circuit Court Judge.
[2] The Fifth Amendment provides, in relevant part, that no person shall be "deprived of life, liberty, or property, without due process of law...." U.S. Const. amend. V.
[3] The Sixth Amendment provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury ... and to have the assistance of counsel for his defense."
[4] The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.
[5] The Fourteenth Amendment provides, in relevant part, that "nor shall any State deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV.
[6] Petitioner fails to articulate a specific constitutional theory in support of this general contention.
[7] Petitioner raises trial counsel's alleged ineffectiveness for failing to object to the arguments later in Ground XXII.
[8] Petitioner raises ineffective assistance of trial counsel for failing to object to the same statements in Ground XXI.
[9] Petitioner raises his counsel's ineffectiveness for failure to preserve these voir dire claims in Ground XVI of the instant petition.
[10] The Court notes that both petitioner and the victim in this case are Caucasian.